### D. JUNE & CO. ET AL. V. F. L. DOKE ET AL

Decided March 16, 1904.

**1.—Injunction—Return—Judgment—Superior Lien.**

An injunction which did not attack the validity of a judgment foreclosing a lien on property or attempt to stay its execution, but was granted merely to protect property from sale upon which a lien was claimed superior to that held by the parties owning the judgment, might properly be returned to another county than the one in which the judgment was rendered.

**2.—Notice—Builder's Lien—Deed of Trust.**

Notice to the agent of a machinery house that there was a builder's lien on certain houses was notice to his employers, and the builder's lien was superior to a deed of trust subsequently given on such buildings and the machinery therein.

**3.—Builder's Lien—Recording—Constitutional Law.**

Article 16, section 37, of the State Constitution gives a lien upon buildings and lots upon which they are situated to the builder upon his furnishing the material, and the filing and recording of the building contract is not essential to the validity of the lien as to the parties or those dealing with them with notice; and an express lien by contract has the same effect.

**4.—Description of Property.**

Description in building contract and notes given for the erection of the buildings held sufficient where those giving the lien had no other property.

**5.—Constitution—Builder's Lien.**

A "builder's lien," as defined by the Constitution, extends to the lots upon which the buildings are situated as well as the buildings themselves, and the same effect will be given to an express contract for a "builder's lien."

**6.—Liens—Sale to Satisfy.**

Where one has a first lien on the machinery in a gin plant and another a first lien on the building and lots, each having also second liens, the machinery should be sold separately from the building and lots.

**7.—Attorney Fees—Correcting Judgment.**

Agreement as to what should be secured by liens held not to include attorney fees, and judgment allowing such corrected.

Appeal from the District Court of Navarro. Tried below before Hon. L. B. Cobb.

*Callicutt & Call* and *Davis & Cocke,* for appellants.

*McClellan & Prince,* for appellees.

FLY, ASSOCIATE JUSTICE.—This suit was instituted by F. L. Doke against W. M. Mash, J. J. Hall, D. June & Co., composed of D. June and O. S. French, and the Navarro County Farmers Gin and Milling Association, to restrain the sale of lots 6, 7, 8 and 9 in block 371, known as the Southside addition to the city of Corsicana, Texas, and the houses and improvements thereon, and to obtain judgment declaring that he, F. L. Doke, had superior title to the property; that the property be ordered to be sold and the proceeds be applied first on the payment of debts due by the association to appellant. A temporary injunction was issued by Hon. J. E. Dillard, judge of the Fortieth Judicial District of Texas, and was made returnable to the District Court of Navarro County, which is in the Thirteenth Judicial District. The cause was tried with-

out the aid of a jury, and judgment was rendered perpetuating the injunction, and in favor of D. June & Co. and F. L. Doke for their respective debts against the association and a foreclosure of their respective liens, priority of lien being given on the buildings and lots to F. L. Doke, and a lien subject to the lien of June & Co. on the machinery in the houses. It was directed that the houses and lots be sold in one parcel and the machinery therein in another.

In the early summer of 1901 the Navarro County Farmers Gin and Milling Association was incorporated, having no assets, except the certain lots above mentioned with a house thereon and notes given by its stockholders for the payment of stock subscriptions. The association desired to buy gin machinery and build the necessary houses in which to place it. On July 1, 1901, a contract was made between June & Co. and the association in which it was agreed by the former that they would furnish the machinery necessary for the gin plant and erect the same in buildings to be erected by the latter and certain notes were to be given for the machinery by the association. The contract contained, among others, the following stipulations:

"Whereas the party of the first part did on the 19th day of June make a proposition to the said second party, which was accepted by said second party, and on the 1st day of July, 1901, the said parties hereto by mutual consent modified the said proposition of the said first party, and which said proposition and acceptance by and between the parties hereto, will and does read as follows, to wit: 'That the said first party does sell and agrees to deliver and erect the same in first-class and workmanlike manner in the buildings of the said second party in the city of Corsicana, Texas (the plans of said buildings to be furnished by said first party), the following machinery, to wit: The same specified on our printed order blank, which as a whole, is made a part of this contract.'

"It is agreed that the net earnings of said gin after the payment of the buildings to be erected are paid for are to be applied to the extinguishment of the debt of D. June & Co., inspection of the terms of said notes, as evidenced by the notes of the said corporation by its directors. Note for $1208.34, due October 15, 1901; note for $1208.34, due November 15, 1901; note for $2416.66, due October 15, 1902; note for $2416.66, due October 15, 1903.

"Said notes to be made payable to the order of D. June & Co., at Waco, Texas, with 8 per cent interest from date of said machinery at the railroad depot mentioned in this order, and if not paid when due then the above notes are payable at Waco, Texas, with 10 per cent additional for attorney's fees, if sued upon or placed in the hands of an attorney for collection; said notes to be secured by deed of trust (upon the printed form of D. June & Co.) on said machinery, lots and buildings of said second party.

"And in case we receive said machinery, or any part thereof, and fail or refuse to execute said notes and deed of trust lien, said failure or refusal shall, at once, mature and render due and payable at Waco, Texas,

the full amount of this contract, including 10 per cent thereon as attorney fees, if sued on or placed in the hands of an attorney for collection, with the right to at once enforce the lien hereby retained on said machinery to secure the same.

"It is agreed that said machinery is to be located in Navarro County, Texas, at Corsicana, Texas, and shall not become a fixture attached to any realty, but shall remain as personal property, the title remaining in D. June & Co. until the notes and deed of trust have been executed, as herein provided."

On July 12, 1901, the association entered into a contract with F. L. Doke and J. W. Cooper to pay them $1300 to erect buildings for a gin, the following clause being therein: "It is hereby especially agreed and understood that a builder's lien is retained on the buildings until paid for." On the notes given for the amount to be paid for the buildings was the following indorsement: "It is especially understood that a builder's lien is retained on one certain ginhouse, and accompanying buildings, situated in Corsicana, on South Fifteenth Street, and that the directors hereby waive all claims until within notes are paid in full." The indorsement was signed by the directors of the association at time the notes were executed, and they were made payable to the order of F. L. Doke, who furnished material to build the ginhouse and other houses. Cooper built the houses with the material furnished by Doke, and the notes were given to Doke for the material. Hill, an agent of D. June & Co., was present when the contract for the material was made and knew of its contents, and also knew of the execution of the notes, and the lien. Holderman, the manager for June & Co., knew that the houses were built on credit, and knew they were not paid for when he took the mortgage on the buildings and lots. The terms of the written contract between Doke and the association were agreed on before the contract of July 1, 1901, was made with June & Co., and those terms were afterwards on July 12, 1901, reduced to writing. The houses were completed in the latter part of July, and after the machinery had been delivered and installed on September 21, 1901, the association executed to D. June & Co. a chattel mortgage on the machinery, and on same date executed a deed of trust on the machinery, the lots and "all improvements upon same now, or placed thereon during continuance of this trust."

On June 20, 1902, D. June & Co. sued the association on its debt and mortgage in the District Court of McLennan County, and obtained a judgment for the debt and foreclosure of its lien. On January 30, 1903, an order of sale was issued out of that court, and the property in controversy was seized by J. J. Hall, the sheriff of Navarro County, and W. M. Mash was placed in possession of it to hold it until it was sold. That sale was enjoined in this suit. The findings of fact of the trial judge are sustained by the statement of facts, and are approved by this court.

The first and second assignments of error claim that the court erred

in not dismissing and dissolving the injunction granted in the case, because it was made returnable to the District Court of Navarro County, when it should have been made returnable to the District Court of McLennan County. The injunction sought and obtained in this cause did not attack the judgment rendered in favor of D. June & Co. against the Navarro County Farmers Gin and Milling Association, or prevent its execution, but was merely ancillary to a suit brought to have a lien held by D. June & Co. on certain property declared secondary to that of the plaintiff and to restrain the sale of the property until that question was decided. There was no attack upon the validity of the judgment, no attempt to stay its execution. The effort was to protect certain property from sale upon which a lien was claimed superior to that held by the parties owning the judgment under which an order of sale was issued. As said in Van Ratcliff v. Call, 72 Texas, 491: "There can be no doubt that where the execution of the judgment generally is sought to be prevented, or where the writ is granted to stay, that is stop, the execution of a judgment, the statute is imperative and is susceptible of but one construction—that is, that the writ shall be returned or the suit brought in the county where the judgment was rendered. But the law requiring a suit to enjoin the execution of a judgment to be brought in the county of its rendition evidently applies to suits attacking the judgment, questioning its validity, or presenting defenses properly connected with the suit in which it was rendered and which should have been adjudicated therein. It has no application to parties who do not sue to stay or enjoin the execution primarily of the judgment as contemplated by the statute, but who sue to prevent the sale of property alleged to belong to them under a judgment, however valid and regular it may be, to which they are not parties and for the satisfaction of which their property could in no event be subject." The foregoing construction of the statute has not been questioned in any decision of the Supreme Court, but it has been approved. Leachman v. Capps, 89 Texas, 690.

In the case of McCargo v. Smith, 23 Texas Civ. App., 714, it is said: "The judgment of the district court dismissing this suit for want of jurisdiction must be reversed, because the suit was not brought to enjoin the execution issued out of the county court, but merely to enjoin the sale of lands levied on under that execution. Appellants below were strangers to the record of the county court case, and were clearly entitled to have the district court where the land in controversy is situated determine whether or not they were entitled to enjoin the sale thereof, under execution issued out of the county court, upon the ground, as alleged by them, that the same was not subject to levy and sale as the property of the defendants in execution." That language is directly in point in this case.

The fourth, fifth, sixth and seventh assignments of error complain that certain findings of fact of the trial judge are not sustained by the statement of facts. Our conclusions of fact sustain the findings of fact

of the trial judge, and consequently the assignments of error must be held to be without merit. Hill was not only a salesman, but advised and assisted, as the representative of D. June & Co., in the making of the contract with Doke and also superintended the building and installation of gin plants. He knew about Doke's lien, and Holderman, the manager, knew that the houses were built on credit and that Doke furnished the material.

The sale of the machinery to the association hinged on the erection of the houses. The contract made between June & Co. and the association on July 1, 1901, was conditional on the building of a house to hold the machinery. The contract did not go into effect until the houses were completed. Without them there could be no sale, and Hill, as the agent of D. June & Co., was actively promoting the contract with Doke to build the houses. This was directly within the scope of his employment, because he was a salesman of machinery for D. June & Co. Notice to him of the existence of the lien held by Doke was notice to his employer.

Holderman, the manager in Texas for D. June & Co., contracted for sale of the machinery with the view to the house being built, knew that it must be built on credit, and knew that the Constitution and laws of Texas gave a lien to builders and materialmen. These circumstances, independent of the actual notice given to Hill, were sufficient to put D. June & Co. upon inquiry and charged them with notice. The slightest inquiry would have brought home to Holderman the knowledge that Doke had a lien upon the houses for the material furnished with which to build them. Farmers and M. Nat. Bank v. Taylor, 91 Texas, 78.

The words of the instrument dated July 1, 1901, indicate, and the other facts tend to establish, that the sale of the machinery was a conditional one and rested on the completion of houses in which to place the same. The contract was in effect a promise to give a lien when the houses were completed and the machinery delivered. But if it be held that the lien arose on July 1, 1901, there was an absolute agreement on the part of Hill, representing D. June & Co., that Doke's lien should have precedence over any lien held by them. Hill drew the plans for the buildings.

When Doke furnished the material to build the houses for the association he had a lien upon the buildings and lots upon which they were situated under the provisions of section 37, article 16, of the State Constitution, independent of the provisions of the statute. Strang v. Pray, 89 Texas, 525. That decision is construed to hold, in an opinion rendered by the Court of Civil Appeals of the Second District, and published, in connection with an opinion of the Supreme Court commending it, in Supreme Court Report, that the filing and recording of the contract or account, as provided in the statute, is not necessary in any case arising between the original contractor and the owner; "that it is only necessary to fix, secure and protect the lien as against subsequent purchasers and mortgagees and lienholders who become so in good faith, for

a valuable consideration, without notice of such claim and lien, and that this is all that the Legislature meant by that statute. It could not prescribe conditions of forfeiture, nor conditions upon which the lien should arise or take effect. The Constitution covered that part of the subject fully by declaring that the contractor who furnished the material or did the work should have the lien. No record within four months, or any other time, is required to give the lien." The Supreme Court said of the opinion: "We deem it unnecessary to attempt to add anything to the clear and satisfactory statement made by said court of the legal principles governing the case." Farmers and M. Nat. Bank v. Taylor, 91 Texas, 78.

This court, following the decisions cited, in the case of Delauney v. Butler, 55 S. W. Rep., 752, held: "It is unnecessary for us to inquire whether appellee complied with the provisions of the statute concerning registration of his claim, for we understand from the decisions of the Supreme Court that the Constitution, in cases like this, gives the lien, and that the statutory provisions concerning registration of the claim are important only for the protection of the owner of the property, or purchasers, or incumbrancers." See, also, Texas B. Supply Co. v. Investment Co., 22 Texas Civ. App., 349, and Bassett v. Mills, 89 Texas, 162.

It follows from the propositions stated in the foregoing decisions that Doke had a lien on the houses and lots of the association in so far as the owner or any other person charged with notice was concerned, regardless of the registration of his claim, and that he could, as a matter of course, establish the identity of the lots by oral testimony.

But if Doke did not obtain the constitutional lien by reason of a failure to file and record his contract, he obtained and held a lien by reason of the express contract between him and the association. The provisions of the statute as to filing and registration can not affect the force and validity of a lien made and agreed to in writing by the parties. It is true that the lien given by the written contract is described as "a builder's lien," but that description would not cause it to be ineffective unless filed and recorded as required for the statutory builder's lien. It is not dependent on the statute except in so far as·it may be necessary to consult it, to ascertain the signification and extent of a "builder's lien." Being an express lien, it was binding between the parties and all others affected with notice of it regardless of the fact that it was not filed and recorded.

The conclusion of this court is borne out and sustained by the case of Lignoski v. Crooker, 86 Texas, 324, in which it was said: "The liens which they seek to enforce are liens arising from an express contract, and not the statutory liens given to persons who furnish material to make improvements; and so far as Lignoski and wife are concerned, it is wholly unimportant whether the instruments were recorded or not."

It was shown by the evidence that the association had no property but those lots upon which the buildings were erected and the property could

be readily identified, and it follows that the description in the contract and notes was a sufficient designation of the property to fix the liens. Myers v. Maverick (Texas Civ. App.), 27 S. W. Rep., 950. A writ of error was granted in the case cited, but the opinion was fully sustained and the judgment affirmed by the Supreme Court. Houston v. Myers, 88 Texas, 127.

The lien is described in the contract as a "builder's lien," and evidently has reference to the lien described in the Constitution and statute, because there is no other builder's lien in Texas. In order therefore to arrive at the meaning of the parties when they used the term "builder's lien," resort must be had to the definitions given in the Constitution and statute. By a reference thereto we find that the "builder's lien" extends not only to the house or building erected, but also to the lot or lots of land necessarily connected therewith. We think, therefore, that the court did not err in foreclosing the lien on the lots and the buildings.

The objection to the sale of the machinery and the lots and houses in separate parcels is clearly without merit. If June & Co. have a first lien on the machinery and Doke a first lien on the houses and lots, the only way to arrive at a proper distribution of the funds arising from a sale of the property would be by separate sales.

The agreement as to what was to be secured by the liens in the notes and contract, when read in connection with and in the light of each other, does not seem to contemplate that attorney's fees, if required to be paid, should be secured by a lien on the property. It is doubtful whether the notice given to D. June & Co. as to the lien extended so far as to include the attorney's fees, even though they had been fully provided for in the contract and notes. Evidently the attorney's fees were included by the trial court in the judgment. The judgment was for $980, which must include $89.09 fees, which taken from the $980, leaves $890.90, the principal and interest of the notes.

Appellants contend that the principal, interest and attorney's fees do not amount to $980, but a calculation shows that the true sum is $983.36. Appellants have no cause for complaint, and Doke has not complained.

Appellants made no effort to have the judgment as to the lien for the attorney's fees corrected, although a number of exceptions were filed to the findings of fact and law, and they should not be allowed to cast the appellee Doke in the costs when the matter might have been corrected in the lower court had it been called to the attention of the court.

There are no errors requiring a reversal, and the judgment of the lower court will be corrected so as to give the lien only for the sum of $890, the amount of the principal and interest, and with that correction so made the judgment will be affirmed.

*Affirmed.*

Writ of error refused.