WESTINGHOUSE ELECTRIC & MANUFACTURING CO. *v.* HUBERT.

1. EVIDENCE—CROSS-EXAMINATION—REBUTTAL.

Following cross-examination of defendant to show the relation of the witness who was joined as a party defendant with the firm from which he claimed to have retired before plaintiff sold the goods in question, it was not erroneous to permit defendant's attorneys to examine the witness at length and in detail concerning his arrangement in withdrawing from the copartnership.

2. SAME—DIRECTED VERDICT—PARTNERSHIP.

Nor did the court err in refusing to determine, as a matter of law, that the defendant remained liable as a partner by estoppel, after his retirement from the firm, of which plaintiff's credit man, as defendant claimed, had received actual notice.

3. PARTNERSHIP—LIABILITY BY ESTOPPEL—DISSOLUTION.

Notice to plaintiff's agent, whose duties included investigating credit of customers and their financial standing and to report the facts to plaintiff's credit department, was notice to plaintiff of all matters within the scope of the agency, so that it was bound by knowledge obtained by its agent concerning defendant's retirement as a partner from a firm with which it had never previously dealt.

4. SAME.

Hence it was not error prejudicial to plaintiff to submit to the jury the issue whether notice was in fact given, and to charge that if they found plaintiff's agent received such notice and communicated it to plaintiff, the latter could not recover.

5. SAME—EVIDENCE.

Undisputed testimony of a defendant and of a succeeding member of the firm showing that said defendant had withdrawn from the firm before credit was extended to it, warranted the court in treating the fact as established in his instructions to the jury.

Error to Kalamazoo; Knappen, J. Submitted April 21, 1913. (Docket No. 102.) Decided May 28, 1913.

Assumpsit by the Westinghouse Electric & Manufacturing Company, a foreign corporation, against Louis M. Hubert, Charles S. Kressler, and Herbert E. Congdon, copartners as the Celery City Electric Company, for goods sold and delivered. Judgment for defendant Congdon and in favor of plaintiffs as to other defendants. Plaintiff brings error. Affirmed.

*Robert L. Campbell,* for appellant.

*Jackson & Fitzgerald,* for appellees.

STONE, J. Early in the year 1909 Louis M. Hubert and Charles S. Kressler formed a copartnership under the name and style of the Celery City Electric Company, to carry on the business of selling electrical supplies and doing a general electrical business in the city of Kalamazoo. W. H. Beattys was a traveling salesman for the plaintiff, and the testimony of de-

fendant Kressler shows that, during the early part of 1909, Beattys called upon the firm, but they gave him no orders at that time. In February, 1909, plaintiff wrote defendant Herbert E. Congdon, making inquiry as to the financial responsibility of the Celery City Electric Company. This letter was not answered by Congdon. On the 10th day of March, 1909, defendant Congdon wrote the plaintiff the following letter:

"March 10, 1909.

"WESTINGHOUSE ELECTRIC & MANUFACTURING COMPANY:

"In reply to yours of this date will say, delayed answering yours of 2/9 pending arrangements to take an interest in the business of the Celery City Electric Company, which I have since done, and I think you will find satisfactory references in Dun and Bradstreets.

"Yours most respectfully,
"H. E. CONGDON."

Defendant Congdon was cross-examined by plaintiff under the statute, and testified that he became a member of the defendant partnership about the 8th or 10th of March, 1909, and that he retired from the partnership about the 16th of April following, and sold his interest in said firm to defendants Hubert and Kressler.

In the latter part of April the plaintiff received by mail, from the Illinois Envelope Company, located at Kalamazoo, an order for a motor, and about April 27th or 28th the plaintiff billed the motor to the Illinois Envelope Company at the sum of $195. This order from the Illinois Envelope Company was obtained through the efforts of defendants Hubert and Kressler and of plaintiff's sales agent, Mr. Beattys. It is the claim of defendant Congdon that at the time he was not in any way connected with the Celery City Electric Company, was not a partner in the business, and that Beattys, the traveling salesman of the plaintiff, was so advised before the order was taken.

It seems to be undisputed that the defendants Hubert and Kressler carried on the business in the same name, after the retirement of Mr. Congdon, as before, to wit, the Celery City Electric Company. It seems also to be undisputed that the sale of the motor to the Illinois Envelope Company, having been brought about as above stated, was to be treated as a sale by the Celery City Electric Company, as agents, and that this last named company was to have the benefit of the commissions. So within a day or two after the sale to the Illinois Envelope Company, and before the motor was shipped, the plaintiff, acting under the advice of its traveling salesman, Beattys, the first billing was canceled, and the said motor was billed to the Celery City Electric Company at the price of $175.50. Thereafter other goods were sold to the Celery City Electric Company, until the amount sold to this concern by the plaintiff was $306.78. The amount sold to it by the plaintiff after June 29, 1909, amounted to $42.50.

In November, 1909, the Celery City Electric Company, as copartners, and Louis M. Hubert were declared bankrupt, and upon a composition offered by Hubert, plaintiff received a dividend of 12½ per cent. on its claim. There was claimed to be an unpaid balance of $322.43, and for the recovery of this balance this action was brought against the three defendants above named.

Defendant Hubert pleaded his discharge in bankruptcy; Kressler was not served with process in the suit, so that the question in the case finally resolved itself, upon the trial, into one of defendant Congdon's liability to the plaintiff for all, or a part, of the unpaid amount owing the plaintiff. It is the claim of the plaintiff that the goods sold by it to the Celery City Electric Company were sold upon the strength of Congdon's letter stating that he was a partner, and that until June 29, 1909, plaintiff had no notice, di-

rectly or indirectly, that he (Congdon) was no longer connected with this concern. It was admitted on the trial by plaintiff that for goods which were shipped to the Celery City Electric Company after June 29th, when it received word, through the Bradstreet Mercantile Agency that Congdon no longer was a partner, Congdon would not be liable. But for the goods which were shipped to the Celery City Electric Company previous to that time it is the claim that Congdon was liable, and that a judgment should have been directed by the court in favor of the plaintiff, and against the defendant Congdon for the amount of these items, giving him credit for payments which had been made on account, and for the amount which had been received as a dividend in the bankruptcy court.

It is claimed on the part of the plaintiff (appellant) that the court erred in receiving testimony regarding matters which occurred between Congdon and the other partners, and of which plaintiff had no knowledge; that it erred in allowing testimony to be given by the witnesses Kressler and Congdon against plaintiff's objections and exceptions, and in refusing to grant plaintiff's motion to strike out such testimony; that there was error in overruling plaintiff's motion for a directed verdict, and in submitting the question of Congdon's liability to the jury under the charge as given by the court; that there was error in refusing several of plaintiff's requests to charge, and in giving some of defendants' requests; and that the court erred in its general charge in the various particulars stated in the assignments of error.

W. H. Beattys was sworn as a witness for the plaintiff, and he testified that for a number of years prior to March 1, 1911, he had been in the employ of the plaintiff in the capacity of salesman for portions of the States of Michigan and Indiana. He swore to his personal acquaintance with all of the defendants. He testified that both Mr. Hubert and Mr. Kressler ac-

companied him to the plant of the Illinois Envelope Company, where the sale of the motor was agreed to. He testified that it was understood between the Celery City Electric Company and himself, at the time they were there, that the defendant company would obtain the order, as agent for the plaintiff, under a motor agency agreement which had been entered into. He explained about the cancellation of the first order and the billing of the goods to the defendant company. He further testified as follows:

"A little earlier than this time I had a conference with the defendant Herbert E. Congdon. On that occasion I was introduced to Mr. Congdon by Messrs. Hubert and Kressler, who were occupying the building owned by Mr. Congdon, and he was introduced to me as a partner of the firm, and he stated to me that it was true that he was a partner in the Celery City Electric Company. This conversation took place in the office of the Celery City Electric Company, and the three copartners, Louis M. Hubert, Charles S. Kressler, and Herbert E. Congdon, were present. I met Mr. Congdon once after that time, but I don't think any matters of business were discussed. I just met him and passed the time of day. To the best of my recollection this conversation in which Mr. Congdon told me he was a partner in the Celery City Electric Company took place about a month prior to April 29, 1909."

On cross-examination he testified, among other things, as follows:

"My duties as salesman are not confined entirely to the sale of goods, because I look after the welfare of my customer after the sale is made. I have no authority to give credit. I did business with no member of the partnership known as the Celery City Electric Company on April 29, 1909. The order was sent in by mail. I saw them earlier in the month. I saw Hubert, Kressler, and Congdon. My custom when selling goods, as to finding out the credit standing of the customer, is to get what facts I can learn and refer them to the credit department of the Westinghouse

Electric & Manufacturing Company, to which all such matters are referred.   *   *   *   Mr. Congdon did not tell me that he was no longer a member of the firm."

This witness testified positively that none of the defendants at any time, up to and including the 29th day of April, 1909, advised the witness, by word of mouth or by writing in any way, directly or indirectly, that Herbert E. Congdon had withdrawn from the firm of the Celery City Electric Company. And the creditman of the plaintiff testified that neither he nor the plaintiff, to his knowledge, ever received any notice up to and including April 29th that Mr. Congdon had withdrawn from the defendant company. There was a sharp conflict in the evidence upon this subject.

The defendant Kressler testified that, at or about the time of taking the order for the motor shipped to the Illinois Envelope Company, he had informed Mr. Beattys that Mr. Congdon was no longer a member of the firm. He testified that the conversation took place at Portage street at the store.

"As I recall it now, the conversation that I had with Mr. Beattys about this was that I told him that Mr. Congdon was out, and asked what he was going to do about the credit business. Why, he said it would have to be billed to the Illinois Envelope Company; he had no authority whatever to extend us credit, but it would be later taken up, or words to that effect, but afterwards the bill came to us, and I was satisfied that perhaps he had made arrangements."

It was claimed by defendant Congdon that, inasmuch as plaintiff had not sold goods to the Celery City Electric Company when he was actually a partner, and that he had actually retired from the firm before any credit was extended, he could not be liable to plaintiff in any amount, that notice of his retirement had been given to the salesman of the plaintiff, whose duty it was to report the matter to the plaintiff, and that this was done before any order for any of the goods in question was made.

The case was submitted by the court to the jury, and a verdict was returned, in favor of defendant Congdon, and against the plaintiff, of no cause of action, upon which judgment was subsequently entered against the plaintiff for costs; and the plaintiff has brought the case here upon a writ of error.

The numerous assignments of error are discussed by appellant's counsel in his brief under the following subdivisions:

(1) Errors relating to the admission and rejection of testimony; (2) errors alleged in the trial court's refusal to direct a verdict for the plaintiff against defendant Herbert E. Congdon, and in refusing to give the requests proffered by the plaintiff, and in modifying these requests; (3) errors in the charge of the court.

1. We have examined with care the rulings of the court relating to the admission and rejection of testimony; and, in view of the scope of the testimony of defendant Congdon, drawn out upon the statutory cross-examination conducted by plaintiff's counsel, in which it appeared that the defendant Congdon had withdrawn from the firm about the 16th of April, and he having been interrogated as to the arrangement made by him for the payment of bills of the firm owed at that time, we are of opinion that this subject had been so far opened up by the plaintiff that no error was committed by the court in permitting the defendants to follow up that question and show in detail what had been done by said defendant in the way of the payment of the debts of the firm at the time he withdrew from it.

2. In view of the testimony of the plaintiff's witness Beattys as to his duty and custom of finding out the credit standing of customers, of learning what facts he could, and referring them to the credit department of the plaintiff, to which all such matters were referred, we do not think the court erred in refusing

to direct a verdict for the plaintiff, or in refusing plaintiff's requests to charge.

3. This brings us to the consideration of the important question in the case. The position of the plaintiff is that alleged communications to the salesman regarding matters of credit, or credit standing, or notice of an alleged withdrawal of a partner, will not bind the plaintiff unless such notice has been communicated to the plaintiff. Upon that subject the court charged the jury as follows, and error is assigned thereon:

"If you find that Mr. Kressler did notify the plaintiff's traveling salesman, Mr. Beattys, before any credit was extended to the Celery City Electric Company, that Mr. Congdon had withdrawn from the firm, then I instruct you that Mr. Congdon would not be liable in this action, regardless of whether or not Mr. Beattys communicated that fact to the plaintiff, for Mr. Congdon would not be liable by failure of the plaintiff's agent to perform his duty towards the plaintiff."

Upon this point plaintiff's counsel relies upon the case of *Neal* v. *M. E. Smith & Co.,* 116 Fed. 20, 54 C. C. A. 226. The opinion in that case was by Thayer, Circuit Judge. The statement of facts shows that there was testimony introduced at the trial which tended to show that on a given date the plaintiff's traveling salesman, by the name of Tracey, called at the place of business of the defendant and solicited the defendant Cushman to order some goods; that in the course of this interview Cushman said, among other things, that he had "bought Mr. Neal (the other partner) out now" and was "running on his own hook." The testimony to this effect was given by the defendant Neal, who claimed to have been standing by and to have overheard the conversation between Tracey and Cushman. The other defendant, Cushman, testified that at a given date he was in the city

of Omaha where the plaintiff company did business; that Tracey took him into the plaintiff's place of business and introduced him to the plaintiff's credit manager as, "Mr. Cushman, of Charter Oak, the whole cheese of the Charter Oak Mercantile Company." The goods, it appears, on account of which the suit was brought, were sold at various times subsequent to the first interview. The court said:

"The sole question which arises upon the record is whether this evidence necessitated the submission of the case to the jury to determine whether Smith & Co. had received notice, prior to the sale of the goods, of Neal's withdrawal from the firm. The defense which Neal made was that he retired from the firm in the month of March, 1898; that notice was given to all persons with whom that firm had previously dealt of his retirement; that such notice was given to the plaintiff company; and that the goods sued for were sold after his retirement from the firm. The lower court withdrew the case from the jury, holding that there was not sufficient evidence to warrant a finding that a notice of Neal's withdrawal from the firm had been given to the plaintiff company before the goods were sold. The witness Tracey denied that he ever informed plaintiff company of Neal's withdrawal from the firm, or that he was ever advised of that fact himself prior to the sale of the goods.

"Under these circumstances, the point to be determined is whether the notice given to Tracey, assuming that it was so given, or that a jury would have so found, was notice to the plaintiff company, since there is no substantial evidence that notice of the alleged withdrawal was otherwise communicated to it. The statement, if it was made, that Cushman was 'the whole cheese' cannot be accepted as a proper or sufficient notice of the dissolution of the firm. It might mean that or something else. And the question whether notice given to Tracey was adequate to bind the company depends, necessarily, upon the scope of his agency. The testimony on this latter point was to the following effect: That Tracey was simply a traveling salesman of the plaintiff company; that his

175 MICH.—37.

duties were to sell goods or solicit orders; that after taking an order it had to be submitted to his employer for its acceptance or rejection; and that he had no other duties than these, or authority to make arrangements binding upon the company.

"When a person retires from a firm with which he has been connected, it is his duty to advise all persons with whom the firm has previously had dealings that he has so withdrawn, if he would absolve himself from liability for credit subsequently extended by such persons to the firm from which he has retired. The law casts this burden on the retiring member; and, where the firm name remains unchanged, it does not compel those who have previously dealt with it to ascertain, each time that credit is extended, whether the membership thereof remains the same as before. In the absence of a notice to the contrary, they may assume that it does. This doctrine is elementary. * * * We are of opinion that the notice said to have been given by Cushman to Tracey was inadequate, and not binding upon the plaintiff, because Tracey's sole duty, as the evidence shows, was to take orders and submit them to his employer for acceptance or rejection, while he had not been armed with authority to extend credit or to determine to what extent customers were trustworthy; nor had it been made a part of his duty, so far as the record discloses, to ascertain who composed the firms with which his employer dealt, or to take note thereof, or to make report of changes therein. These duties, as it seems, had been devolved upon the credit department, and not upon the salesmen."

Conceding that this case states the correct rule, we think that it is easily distinguishable from the instant case. In this case we think it should be said that it appears undisputed that Mr. Congdon had retired from the firm before any credit was extended to the defendant company, and the plaintiff cannot be said to have had prior dealings with the company. We think that the language, which we have already quoted from the undisputed testimony of the witness Beattys, wherein he said, "My custom when selling goods, as to finding out the credit standing of the customer, is

to get what facts I can learn and refer them to the credit department of the Westinghouse Electric & Manufacturing Company, to which all such matters are referred," shows that if such information was given to him, the same was acquired by him in the course, and within the scope, of his agency. The doctrine seems well established by the authorities that the failure of an agent to communicate to his principal information acquired by him in the course and within the scope of his agency is a breach of duty to his principal, but as notice to the principal, it has the same effect as to third persons as though his duty had been faithfully performed. *Cox* v. *Pearce*, 112 N. Y. 637 (20 N. E. 566, 3 L. R. A. 563).

We think the weight of authority is to the effect that, where notice is given to an agent in the discharge of his duty, and within the scope of his agency, it must operate as notice to the principal. In such a case knowledge of the salesman is knowledge of the firm. Mechem on Agency, § 721; *Straus, Gunst & Co.* v. *T. O. Sparrow & Co.*, 148 N. C. 309 (62 S. E. 308).

The principal is charged with all notice or knowledge, relating to the subject-matter of the agency, which the agent acquires or obtains while acting as such agent and within the scope of his authority. *Jenkins Bros. Shoe Co.* v. *G. V. Renfrow & Co.*, 151 N. C. 323 (66 S. E. 212, 25 L. R. A. [N. S.] 231).

This subject is fully discussed in this case, and there is a lengthy citation of authorities, among others that of *Goodspeed* v. *Plow Co.*, 45 Mich. 322 (7 N. W. 902). In that case Goodspeed, the defendant, as appears by the printed record, testified that on or about the date in question he informed one Woodford, the general agent of the plaintiff, who took the order for the goods, that he and Fales had dissolved their partnership, and he did not desire any goods shipped to Fales & Goodspeed on his account, and that such partnership was actually dissolved February 13, 1879.

The plaintiff gave evidence tending to dispute the notice to the agent of dissolution. Justice CAMPBELL speaks of the notice in the following language:

"On the 13th of February the firm was dissolved, and on the same day the agent was informed of the dissolution. * * * The shipment of the goods was not made in accordance with the terms of the order, and was not made until the order had been rescinded by notice of the dissolution."

This indicates that the notice of dissolution to the agent was held to be notice to the plaintiff.

It cannot be consistent with any just conception of fair dealing to subject a retired partner to the payment of debts contracted after the notice of dissolution has been given to the creditor extending credit. Such a creditor cannot assume the status of partnership to be unchanged, when he has actual notice of a change imputed to him from the knowledge of his agent, where the agent was such an agent that notice to him was notice to the principal. See, also, *D. June & Co.* v. *Doke,* 35 Tex. Civ. App. 240 (80 S. W. 402) ; *Hier* v. *Odell,* 18 Hun (N: Y.), 314. See, also, collection of authorities in note at foot of *Bush* v. *W. A. McCarty Co.,* 127 Ga. 308 (56 S. E. 430), reported in 9 Am. & Eng. Ann. Cas. at page 244.

The most of the remainder of the alleged errors discussed in plaintiff's brief are disposed of under the authorities cited, that notice to the agent was notice to the plaintiff, and the trial court left the question of notice to Beattys as one of fact to the jury; for, if given, as said in the case of *Cox* v. *Pearce,* above cited, "such notice was in law a notice to the principal, although it was never communicated to him."

It is true that the trial court submitted to the jury the question whether such notice had been actually communicated to the plaintiff. This part of the charge was more favorable to the appellant than the law of the case would warrant under the authorities above

referred to, and we do not think the plaintiff can complain because of such submission.

It is further contended by counsel under this subdivision of his brief that there is no question that the plaintiff actually extended credit to the Celery City Electric Company upon the strength of Congdon's connection. We think that this was an immaterial matter, provided the jury found that notice had been given to Beattys, the agent; for, if this traveling agent of plaintiff had actual knowledge of the withdrawal, as the jury must have found, it is not important whether plaintiff sold the goods relying upon Congdon's connection with the defendant firm or not.

Counsel also complains of the charge because the court stated that the undisputed evidence showed that Congdon had retired from the partnership previous to the time when the credit was extended by the plaintiff. A reading of the record satisfies us that the court was clearly correct in this statement. The testimony of Mr. Congdon and Mr. Kressler was not disputed in any way as to the time when he withdrew. Both of them fixed the time as previous to that when any credit was extended, and particularly with reference to the sale of the motor, which was the first item for which credit was extended.

Error is also assigned upon that portion of the charge with reference to the subsequent dealings of the plaintiff with the Celery City Electric Company after it was conceded the plaintiff had notice of the withdrawal of the defendant Congdon. We do not think, in view of the course which the trial took, that there was any error in submitting this question to the jury.

In our opinion there was no reversible error on the trial of which the appellant can complain, and the judgment of the circuit court is affirmed.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, KUHN, OSTRANDER, and BIRD, JJ., concurred.