791 F.2d 935
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
RANDOLPHE G. ROULIER, Plaintiff-Appellant,
v.
DAVID E. WASSERSTROM and PELINO, WASSERSTROM, CHUCAS &
MONTEVERDE, a now defunct Pennsylvania
professional corporation, Defendants-Appellees.
 85-1305
 United States Court of Appeals, Sixth Circuit.
 4/2/86
 
 AFFIRMED
 E.D.Mich.
 On Appeal from the United States District Court for the Eastern District of Michigan
 Before: ENGEL, KENNEDY and CONTIE, Circuit Judges.
 PER CURIAM.
 
 
 1
 This appeal arises out of a summary judgment in a diversity case alleging attorney malpractice. The United States District Court for the Eastern District of Michigan entered summary judgment on the ground that the statute of limitations had run. Plaintiff-Appellant alleges that there remain issues of fact on the statute of limitations issue and that the District Court failed to construe the evidence on that issue in the light most favorable to appellant.
 
 
 2
 Appellant's cause of action arises out of some tax advice given by David Wasserstrom, defendant-appellee, a member of co-defendant-appellee, Pelino, Wasserstrom, Chucas & Monteverde, a now-defunct Pennsylvania professional corporation. The facts, construed in the light most favorable to appellant, see, e.g., Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970); Watkins v. Northwestern Ohio Tractor Pullers Ass'n, Inc., 630 F.2d 1155, 1158 (6th Cir. 1980), are as follows. Plaintiff alleges that in late 1975 and/or early 1976, Wasserstrom solicited appellant to become a partner in a Michigan co-partnership, Windmill Associates, to be formed for the purpose of investing in the production of a motion picture, 'The Amorous Adventures of Don Quixote and Sancho Panza.' The investment's selling point was certain favorable tax deductions. Each partner would invest a certain amount of cash, and the partnership would sign a non-recourse note for the balance of the film's purchase price. Each partner would be allocated his share of the note (presumably based on the size of his cash investment) for purposes of claiming investment tax credits and depreciation deductions.
 
 
 3
 The partnership purchased the film on March 31, 1976, paying a total of $200,000 in cash and $1,200,000 in the form of the non-recourse note. Appellant (one of five partners) contributed $50,250, and $300,000 of the note was allocated to him. Meanwhile, Congress was considering legislation aimed, in part, at limiting the very deductions and tax credits that made the Windmill Associates partnership so appealing. The House of Representatives passed the bill on December 4, 1975. It then was approved by the Senate and signed into law October 4, 1976. Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1531. The Act applied retroactively to the 1976 tax year. The effect of the change in law was to limit the amount appellant could claim, for depreciation and tax credit purposes, from the partnership investment to his $50,250 cash investment.
 
 
 4
 Appellant or his accountant, John Smith, filed appellant's 1976 tax return using the $350,000 figure as appellant's cost (or basis) in the film investment. In June 1981, appellant received an Examination Report from the Internal Revenue Service explaining that the Service felt an adjustment of appellant's tax liability for three years, including 1976, was necessary. On November 19, 1982, appellant received a Notice of Deficiency from the Service notifying him that it had concluded that appellant owned over $55,000 in back taxes for 1976. On October 24, 1983, appellant entered into a Settlement Agreement with the Service whereby appellant agreed to pay $29,679.55 in back taxes and interest for 1976.
 
 
 5
 Appellant brought the present suit on March 22, 1983. The gravamen of appellant's suit is that Wasserstrom assured appellant and appellant's accountant (Smith) in early 1976 that the proposed changes in the tax code would not affect the tax advantages of the Windmill Associates investment. The complaint contained four counts-misrepresentation, negligence, breach of contract, and malpractice. The court reasoned at one point, however, that these claims constituted but one wrong-legal malpractice--and that the statute of limitations had run on this claim.
 
 
 6
 It went on to hold, however, that if a breach of contract claim could be found, it too was barred by the applicable statute of limitations. Appellant does not appeal this finding, and does not quarrel with the District Court's conclusion that the misrepresentation and negligence claims are not distinguishable from the malpractice claim, and thus are governed by the malpractice statute of limitations.
 
 
 7
 Two Michigan statutory provisions are pertinent.
 
 600.5805 Injuries to person or property
 
 8
 (1) A person shall not bring or maintain an action to recover damages for injuries to persons or property unless, after the claim first accrued to the plaintiff or to someone through whom the plaintiff claims, the action is commenced within the period of time prescribed by this section.
 
 
 9
 .............................................................
 
 
 10
 ...................
 
 
 11
 * * *
 
 
 12
 (4) The period of limitations is 2 years for an action charging malpractice.
 
 
 13
 600.5838 [Accrual of claim]; malpractice by member of state licensed profession
 
 
 14
 (1) A claim based on the malpractice of a person who is, or holds himself out to be, a member of a state licensed profession . . . accrues at the time that person discontinues treating or otherwise serving the plaintiff in a professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim.
 
 
 15
 (2) An action involving a claim based on malpractice may be commenced at any time within the applicable period prescribed in sections 5805 or 5851 to 5856, or within 6 months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later. The burden of proving that the plaintiff, as a result of physical discomfort, appearance, condition or otherwise, neither discovered nor should have discovered the existence of the claim at least 6 months before the expiration of the period otherwise applicable to the claim shall be on the plaintiff. A malpractice action which is not commenced within the time prescribed by this subsection is barred.
 
 
 16
 M.C.L.A. Secs. 600.5805, 600.5838. A legal malpractice suit is subject to these general malpractice provisions. Sam v. Balardo, 411 Mich. 405, 412, 308 N.W.2d 142 (1981).
 
 
 17
 According to M.C.L.A. Sec. 600.5838(1) appellant's malpractice claim accrued at the time appellees discontinued serving appellant in a professional capacity as to the matters out of which the claim for malpractice arose, regardless of the time appellant discovered or otherwise had knowledge of the claim. It is undisputed that Wasserstrom rendered no legal services and offered no advice to appellant after December 31, 1976. Wasserstrom had power of attorney for the partnership, and that power was never revoked, but since 1976 it has not been exercised. Thus, under M.C.L.A. Sec. 600.5805, appellant had until December 31, 1978 to sue Wasserstrom. The other appellee, Polino, Wasserstrom, Chucas & Monteverde, has been defunct since December 31, 1977. Thus, even if Wasserstrom continued serving appellant past December 31, 1976, the claim against the professional corporation became untimely on January 1, 1980.
 
 
 18
 M.C.L.A. Sec. 600.5838(2) creates an exception to the 'two years from the time the claim arose' requirement of section 5805. If appellant did not discover, or should not have discovered the existence of the claim until after October 22, 1982 (six months before he filed suit), he can still bring his claim. Appellant's claim, as noted above, is based on a misrepresentation or negligent representation that the 1976 Tax Reform Act would not affect the tax advantages of the film investment. The question becomes, when did appellant discover, or when should he have discovered that Wasserstrom had misled him. This is a question of fact, but summary judgment is nevertheless appropriate if facts are not in dispute.
 
 
 19
 The District Court properly focussed on the knowledge of Smith. It is undisputed that Smith's firm conducted its own investigation of the effect of the new tax law. Appellant also concedes the significance of a 'K-1' form prepared by Smith in connection with Appellant's 1976 partnership taxes. That form indicates that appellant's allowable loss deduction under the Tax Reform Act of 1976 was limited to his capital contribution of $50,250.[1]
 
 
 20
 In light of this evidence, there can be no genuine dispute that appellant 'discover[ed] or should have discovered the existence of [his] claim' against appellees during 1977. Normally, the knowledge of an agent is imputed to the principal. Westinghouse Electric Co. v. Hubert, 175 Mich. 568, 579, 141 N.W. 600 (1913) ('The principal is charged with all notice or knowledge, relating to the subject matter of the agency, which the agent acquires or obtains while acting as such agent and within the scope of his authority.'); Bryce v. Jones, 54 Mich. App. 709, 715, 221 N.W.2d 433 (1974), rev'd on other grounds, 394 Mich. 425, 230 N.W.2d 272 (1975). This is true even when the imputation is for the purpose of applying a statute of limitations. In a Michigan case involving a claim that the statute of limitations was tolled by fraudulent concealment, the appellee claimed that the agent's alleged knowledge of the fraudulent act estopped the principal. This Court, applying Michigan law, noted:
 
 
 21
 It is a general rule that notice of a fact acquired by an agent while transacting the business of his principal is notice to the latter . . .. It is the duty of the agent to communicate to the principal information thus acquired which would affect the rights of the former and the presumption is the agent has performed the duty in this behalf. If he has not, still the principal should be charged with the knowledge of his agent because he selects him and confides to him the business in hand, but the reason for the rule ceases when the agent departs from the apparent or implied duties delegated to him by his principal.
 
 
 22
 Schram v. Burt, 111 F.2d 557, 564 (6th Cir. 1940) (holding that the agent acted outside the scope of his duties).
 
 
 23
 Appellant does not dispute the District Court's finding that Smith's knowledge of the effect of the 1976 Act on the partnership's tax advantages was acquired while Smith was appellant's agent for tax purposes. Smith was in complete control of appellant's tax matters and had power of attorney with respect to appellant's dealings with the IRS. Furthermore, Smith's knowledge about the effect of the 1976 Act was acquired while Smith was acting in the scope of his duties as appellant's agent, and there is no indication whatsoever of an adverse interest between Smith and appellant.
 
 
 24
 Even if there were a factual dispute over Smith's knowledge, the fact remains that the Service notified appellant of an alleged deficiency on June 6, 1981. The Examination Report brought the possibility of malpractice to appellant's attention. It specifically delineated that the Service felt several claimed deductions and credits related to the partnership were inflated. The Report was certainly enough, as a matter of law, to put appellant on notice that he may have been misled by Wasserstrom. Thus, appellant 'should have discovered' his claim at that point, based on the Examination Report alone, and was therefore required to file suit on or before December 6, 1981.
 
 
 25
 Appellant also argues that his claim did not arise until the Service issued its Notice of Deficiency on November 19, 1982. The essence of this position is that a tort claim does not accrue until all of the necessary elements of a cause of action have occurred and can be alleged in a proper complaint. 'Until a plaintiff suffers damages, a tort claim does not exist, cannot be asserted, and, therefore, does not accrue so as to trigger the running of the statute of limitations.' Luick v. Rademacher, 129 Mich. App. 803, 806, 342 N.W.2d 617 (1983). 'It is, however, the fact of identifiable and appreciable loss, and not the finality of monetary damages, that gives birth to the cause of action.' Id.
 
 
 26
 Appellant's contention is, in short, that until the Service caught the error and issued a Notice of Deficiency, appellant suffered no identifiable or appreciable loss, in fact, no loss at all. Appellant, however, did suffer identifiable and appreciable loss at least as early as June 1981, when appellant received the Examination Report. Appellant concedes that he began incurring expenses in defending himself against the Service as of that time. Even if these expenses were small in comparison to the final damage alleged, appellant's claim accrued when those initial expenses were incurred. Luick, 129 Mich. App. at 807 ('The cause of action arises, however, before the client sustains all, or even the greater part, of the damages occasioned by his attorney's negligence. Any appreciable and actual harm flowing from the attorney's negligent conduct establishes a cause of action upon which the client may sue.') (quoting, with approval, Budd v. Nixen, 6 Cal. 3d 195, 200-01, 98 Cal. Rptr. 849, 852-53, 491 P.2d 433, 436-37 (1971)).
 
 
 27
 Accordingly, the District Court's summary judgment is affirmed.
 
 
 
 [1]
 The form is a single sheet of paper with Smith's letterhead at the top, containing an explanation of the effect of the 1976 Act on partnerships, and a typewritten sentence at the bottom:
 Since you have no 'at risk' liability, your allowable loss deduction under the Tax Reform Act of 1976 is limited to your capital contribution, or $50,250.
 (Exhibit G; App. 136). The dollar amount is handwritten.