KELLEY *v.* HOOGERHYDE.

1. DEEDS—FRAUD—EVIDENCE.
   In suit to set aside a quitclaim deed given by plaintiff to defendants' decedent, record sustained trial court's conclusion that letters from decedent's attorney and decedent herself contained false and misleading statements relied upon by plaintiff and were material factors in inducing plaintiff to transfer the property to decedent.

2. EQUITY—LACHES AN AFFIRMATIVE DEFENSE.
   Laches is an affirmative defense.

   Laches affecting right to restitution, see Restatement, Restitution, § 148 (1), and comments a, b, c.

3. SAME—LACHES—LAPSE OF TIME—PREJUDICE.

 Mere lapse of time, without a showing of prejudice, will not
  constitute laches.

4. SAME—LACHES—LAPSE OF TIME.

 While evidence of lapse of time should be considered with other
  facts and circumstances of a case in determining laches,
  laches will not be permitted to defeat recovery in equity if it
  would be inequitable to do so.

5. DEEDS—FRAUD—DEATH, OF GRANTEE—LAPSE OF TIME—LACHES.

 Death of grantee in quitclaim deed plaintiff grantor seeks to
  have set aside on the ground of fraud committed by the
  grantee and her attorney and lapse of nearly three years
  after discovery of such fraud *held*, not to have effected such
  a change in the status of the parties as to prevent the grant-
  ing of relief to plaintiff, a nonresident, where it appears that
  efforts were made during the lifetime of the grantee to secure
  an amicable adjustment of the controversy.

Appeal from Mecosta; Pugsley (Earl C.), J. Sub-
mitted January 9, 1946. (Docket No. 38, Calendar
No. 43,211.) Decided March 4, 1946.

Bill by Pearl D. Kelley against Edith Hoogerhyde,
ancillary administratrix of the estate of Lillian
Fletcher, deceased, and Frank Pfaller, Jr., trustee
of said estate, to set aside a deed on the ground of
fraud. Decree for defendants. Plaintiff appeals.
Reversed and decree for plaintiff entered.

*Fred R. Everett,* for plaintiff.

*Nuel N. Donley* and *Francis L. Williams,* for de-
fendants.

SHARPE, J. This is a suit to set aside a deed exe-
cuted by plaintiff, Pearl D. Kelley, to Lillian
Fletcher on the 29th day of May, 1931.

The title of this property was originally in Ed-
gar S. Miller, who in 1924 executed a deed to
Charles B. Kelley, deceased husband of plaintiff.
Plaintiff obtained title to the premises through an

assignment of the residue of the estate of her deceased husband. Sometime prior to November 6, 1930, Lillian Fletcher commenced a suit against Jacob Morlock, Jr., and Katherine Morlock to quiet title to certain premises. The case eventually was appealed to the Supreme Court and decided June 2, 1930.* Following the filing of the decree in the *Morlock Case,* Francis L. Williams, the attorney for defendants in the case at bar, who was the attorney for Lillian Fletcher, plaintiff in the *Morlock Case* wrote a letter to plaintiff, the following of which is a copy:

"April 15, 1931

"Mrs. Pearl Kelley,
"Whittaker, Michigan

"Dear Mrs. Kelley:

"Mrs. Lillian Fletcher, whose title in the Chippewa Lake property formerly owned by Edgar S. Miller has been confirmed by the Supreme Court, has requested me to notify you that she desires you to remove from this property and have you execute a quitclaim deed to her. The description which was deeded to you is as follows:

"Com. at intersection of high water mark of Chippewa Lake & the one-eighth line running east and west through S ½ of sec. 21, Chippewa township, thence E. 232 feet and 6 inches, along said one-eighth line, thence due N 250 feet, thence due W to high water mark of said lake, thence along said high water mark to place of beginning, in the county of Mecosta and State of Michigan.

"If you care to make a quitclaim deed of this we will send you the same and $1 to have the matter disposed of amicably.

"Thanking you for your prompt attention, I am

"Very truly yours,
"FRANCIS L. WILLIAMS."

---

* *Fletcher* v. *Morlock,* 251 Mich. 96.—REPORTER.

Shortly thereafter Lillian Fletcher also wrote plaintiff a letter a copy of which reads:

"May 25, 1931.

"Dear Mrs. Kelley:

"My attorney informs me that he has sent you the quitclaim deed for the property on Chippewa lake heretofore owned by Edgar S. Miller. He has requested that I authorize him to proceed in court to recover this property and before authorizing that action to be taken, I thought I would write to you and see if you were not willing to turn over this property without any further trouble as the matter has already been litigated in court.

"Very truly
"MRS. LILLIAN FLETCHER."

In 1941, Mento Everitt Gordinier, plaintiff's niece, consulted the records in the office of the register of deeds in Mecosta county and discovered that the Supreme Court decision in the *Morlock Case* excepted the premises involved in this case. Mento Everitt Gordinier consulted two or three attorneys and endeavored to effect an amicable settlement, but failing to get a return of the property brought the instant suit as attorney in fact of plaintiff.

The cause came on for trial and in an opinion the trial court stated:

"It conclusively appears that the first paragraph of Mr. Williams' letter to the plaintiff was false, and misleading, because the title to the land which had been deeded to Mr. Kelley was not litigated in the Supreme Court decision referred to in that letter. * * *

"The facts remain, however, under the undisputed record, both that this letter and that of Mrs. Fletcher, dated May 25, 1931, before quoted, were relied upon by plaintiff. There is also a failure of proof that there was any consideration paid by Lil-

lian Fletcher to the plaintiff for the deed assailed in these proceedings. * * *

"It cannot be said that the delay has not changed the status of the defendants, because Mrs. Fletcher has been dead since 1942. No one knows what changes might be made in the record or the findings of facts to be made if she were alive to testify. It is hard to conceive of a more radical change in the status of the parties than that occasioned through the death of one of them. * * *

"The delay in bringing this suit for rescission for approximately three years after discovery of the fraud with the intervening death of Mrs. Fletcher is fatal to an action for rescission."

A decree was entered dismissing plaintiff's bill of complaint. Plaintiff appeals and urges that she was not guilty of laches, under the circumstances in this case, in waiting from the summer of 1941 until June, 1944, before commencing suit; and that there was no material change in the status of the parties involved in this case.

It appears that from the summer of 1941 until the commencement of suit Mento Everitt Gordinier, plaintiff's niece and the person who had charge of plaintiff's business affairs in Michigan, did not live in Michigan except for short periods during the summer when she lived in her cottage at Chippewa Lake; that subsequent to August, 1941, she consulted attorneys in Chicago and in Stanton, Michigan, in an endeavor to recover the property for plaintiff. It also appears that plaintiff has lived in California for a period of about six years prior to the trial of the instant suit. She testified:

"I have never had any other conversation with Mrs. Fletcher. I never have had any conversation with Mr. Francis L. Williams in regard to this property, and my dealings with them with regard to this property was limited to those two letters. I did not

have any independent information as to whether or not the statements made in this letter from Mrs. Fletcher and the letter from Mr. Williams, which have been introduced here as exhibits, with regard to the recovery of this property by Mrs. Fletcher were correct. I relied upon the statements made in those two letters at the time that I made the quitclaim deed to this property, which I wouldn't have made the deed if I had known that they had not recovered. I would not have made the quitclaim deed to Mrs. Fletcher if I had not relied on representations in those two letters. I supposed the Court had included that in her recovery. The suit that I referred to in my testimony brought by Mrs. Fletcher against Mrs. Morlock, the former wife of Edgar S. Miller, I supposed was for the recovery of the property belonging to Mrs. Morlock and also to me. I was never notified regarding the suit or anything and I was not a party to that suit, but it was my belief that the property was included and my belief in that regard was confirmed in my mind by the two letters which have been introduced in connection with this deposition.''

The record sustains the trial court's conclusion that Mr. Williams' letter was false and misleading and that the letters of Mrs. Fletcher and Mr. Williams were relied upon by plaintiff and were material factors in inducing her to transfer the property to Mrs. Fletcher.

The only remaining question may be stated, Was plaintiff guilty of laches in delaying the filing of her bill of complaint from 1941 to 1944? The answer to this question may be found in an analysis of previous opinions of this court. In *Chamski* v. *Wayne County Board of Auditors*, 288 Mich. 238, 252, we said: ''Laches is an affirmative defense'' and ''mere lapse of time, without a showing of prejudice, will not constitute laches. *Cudahy Brothers Co.* v. *West Michigan Dock & Market Corp.*, 285 Mich. 18.''

In *Smith* v. *Sprague,* 244 Mich. 577, we said:

"But it is urged that plaintiff has been guilty of laches. There was a lapse of several years between the furnishing of the money and the commencement of this suit. Lapse of time alone is not generally sufficient to sustain the defense of laches. *Walker* v. *Schultz,* 175 Mich. 280. The evidence of lapse of time should be considered with other facts and circumstances of the case in determining the question. Laches will not be permitted to defeat subrogation where it would be inequitable to deny it. *Heth* v. *Oxendale,* 238 Mich. 236. The record is convincing that plaintiff furnished the money in the circumstances testified to by her. It is equitable that she be paid."

In *Walker* v. *Schultz,* 175 Mich. 280, this court quoted with approval the following rule from *Sanborn* v. *Eads,* 38 Minn. 211 (36 N. W. 338):

"The mere lapse of time does not constitute laches, unless the circumstances were such as to make the delay blamable. Whether the delay has been culpable or not may obviously depend upon many facts and considerations, such as the length of time (which cannot be fixed by any definite rule, this being a subject of discretion under the circumstances of each case), the knowledge of the facts, actual or imputable, the consequences as respects others than the plaintiff, and perhaps other things."

In *Grix* v. *Liquor Control Commission,* 304 Mich. 269, plaintiff filed a claim before the court of claims for salary approximately two years after he had been illegally discharged by the commission. After his discharge he protested his dismissal to the civil service commission. We there said:

"In the case at bar defendants rely upon two facts to show laches: namely, that suit was not brought until nearly two years after plaintiff was discharged

and that in the meantime another person was hired and paid for the work that was formerly done by plaintiff. In our opinion the reasons stated do not bring the facts of this case within the exception mentioned in the *Chamski Case, supra* (288 Mich. 238).

"Nor do we think the facts show that plaintiff abandoned his claim. Immediately following his discharge, plaintiff protested his dismissal to the civil service commission."

In *Seymour v. Detroit Copper & Brass Rolling Mills,* 56 Mich. 117, it appears that plaintiff was hired by defendant company at a salary of $3,000 per year, was to be made superintendent of defendant's plant, was to be elected a member of the board of directors and was to purchase $5,000 to $10,000 of company stock. Plaintiff made the stock purchase, but was never made superintendent or elected to the board of directors. Plaintiff came to Detroit and entered the services of the company July 1, 1881, and remained until July 10, 1882. Plaintiff paid $1,000 on the stock purchase. He brought an action to surrender his stock, he demanded his note given as payment for the stock and the $1,000 paid thereon. We there said (p. 122):

"It is claimed by defendant's counsel that upon the testimony of Mr. Gillett the plaintiff waived his election as director of the company, but this was of no account, as we shall presently see. The undisputed testimony shows no laches on the part of plaintiff. It appears from the correspondence of the parties that the claim made by the plaintiff was more or less under consideration for adjustment by the defendant most of the time before suit and before formal rescission was made. I think it was made within a reasonable time."

During the period of approximately three years before suit was commenced, plaintiff endeavored to

secure a deed from Mrs. Fletcher by avoiding the expense and trouble of a law suit. When all of the circumstances are taken into consideration we do not think such delay was fatal to a suit for rescission. It is urged that the death of Lillian Fletcher, two years prior to the commencement of the present suit, constitutes such a change in the status of the parties that plaintiff should be adjudged guilty of laches. Defendant relies upon *Evans* v. *Linck*, 280 Mich. 278, where we said:

"He invokes the familiar principle that one who waits until the death of a witness has prevented denial of his claim or disclosure of the truth is guilty of laches and may not maintain a suit in chancery."

We note that in the *Evans Case, supra,* the principles of law relied upon by defendant availed him nothing and did not prevent a suit in chancery.

In the case at bar it is undisputed that the two letters hereinbefore referred to were an inducement to plaintiff to deed the property to defendant. We note that efforts were made by plaintiff during the lifetime of Lillian Fletcher to secure an amicable settlement of the controversy. The death of Lillian Fletcher prior to the trial of the suit, under the circumstances of this suit, was not such a change in the status of the parties as would prevent granting to plaintiff the relief she is entitled to.

The decree of the trial court is reversed and a decree will be entered herein in harmony with this opinion. Plaintiff may recover costs.

BUTZEL, C. J., and CARR, BUSHNELL, BOYLES, REID, NORTH, and STARR, JJ., concurred.