SHEETS v. HUBEN.

1. Mortgages—Construction of Deed Absolute in Form—Evidence—Intent.
Whether an instrument, in form a deed, should be construed as a mortgage will be determined from an investigation of the instrument itself, the acts of the parties and all surrounding circumstances to see whether the true intent was that the property stand as security for the loan, as the intent of the parties is the determining factor and no form of words employed in the written instrument is conclusive of the intent.

2. Same—Deed Absolute in Form—Construction—Burden of Proof.
The burden rests on parties asserting rights on the theory of a mortgage to establish their claim by clear and satisfactory proof, where the instrument is in form an absolute deed.

3. Same—Deed Absolute in Form—Construction—Consideration.
Deed, absolute in form, is construed as a mortgage, where it appears plaintiff had disposed of a $2,400 purchaser's interest in a land contract, subject to a mortgage, for $1,106 and agreed to pay the balance due on the mortgage, keeping only a life interest in herself.

4. Same—Deed Absolute in Form—Inadequacy of Consideration.
Inadequacy of consideration is not an infallible test in determining whether an instrument, in form an absolute deed, is in fact a mortgage, but it is an indication that the parties did not consider the conveyance to be absolute, especially where the bargaining positions of the parties are markedly unequal.

Appeal from the Superior Court of Grand Rapids; Taylor (Thaddeus B.), J. Submitted October 7,

References for Points in Headnotes
[1-4] 36 Am Jur, Mortgages §§ 5, 125 et seq.; 16 Am Jur, Deeds §§ 5, 6.

1958. (Docket No. 74, Calendar No. 46,864.) Decided December 2, 1958.

Bill by Dorothy Sheets against Joseph Huben and Victoria Huben to have deed declared a mortgage. Decree for plaintiff. Defendants appeal. Affirmed.

*Floyd H. Skinner* and *Alphonse Lewis, Jr.,* for plaintiff.

*Earl T. Glocheski* (*Seraphin S. Orlik,* of counsel), for defendants.

SMITH, J. The question in this case is whether a certain instrument in the form of a deed of conveyance was intended as a deed or as a mortgage. The circumstances leading to the execution of the instrument are these: Mrs. Dorothy Sheets, the plaintiff, was purchasing certain property on land contract, subject to a mortgage. She had previously invested at least $1,500 in the property. She had made a down payment of $1,300, had made monthly payments, upon principal, totalling $478, and, in addition, had made substantial improvements. Financial difficulties, however, had come upon her because of an industrial accident. Her income had shriveled and she fell behind in her payments. During this difficult period she was befriended by her neighbors, Mr. and Mrs. Huben, the defendants before us.

Conversations were had with the Hubens in an effort to ameliorate her financial difficulties. (Mr. Huben was an accountant with the Federal housing administration.) An attorney was consulted and the instrument before us drafted. It was a warranty deed, with reservation of life interest, Mrs. Sheets assuming and to continue the mortgage payments. (The land contract balance was liquidated simultaneously therewith.) Mrs. Sheets insists that the trans-

action was a loan of money to help her in her temporary difficulties, the property merely standing as security for repayment thereof. She alleges that she was ill and "was willing to have defendant secure their money out of the house." She insists that "this paper I signed was to protect all of us in case of my death so they wouldn't lose their money and I wouldn't lose my home and I had money to pay Mr. Huben." She admits that she signed a paper in the lawyer's office. It was read to her, her injury having affected her sight. "I wrote my name," she testified, "on exhibit 1 fairly straight by following the pen with my hand and fingers." Some question arises in our minds as to the efficacy of the reading since she was hard of hearing to the degree that, "to somewhat conserve time" her testimony at the trial of the case before us was taken by deposition but this factor need not be explored as it does not control decision. In short, as she puts it "The lawyer wanted to know what I wanted; I told him I wanted a paper that would protect Mr. Huben and Mr. Huben's mother in case of my death and I wanted something that would protect me equally, that I could get my home back, and as long as I did owe them money it would protect them." The Hubens are equally emphatic that the transaction was not a loan, with security, but an absolute conveyance. It was plaintiff's idea, Mr. Huben said, "That we had helped her in various ways and means and that she had arrived on an agreement upon which I could purchase the house, and she could reserve her life estate on it." It is somewhat revealing of the true nature of what the parties intended that a second mortgage was contemplated, and the idea discarded. "I don't like second mortgages anyway," testified the attorney who drew the instrument. "They cause too much trouble."

Following the discussions referred to, Mrs. Sheets signed the aforementioned warranty deed to the Hubens, with reservation in the following terms:

" 'Reserving and excepting unto the said grantor, Dorothy L. Sheets a life estate with the power and complete use and enjoyment of the said premises, with the said grantor to assume and make payments of $41.74 on that certain mortgage on the said premises held by General American Life Insurance Company, St. Louis, Missouri, during her lifetime, and at her death, if there be any indebtedness owed on the said mortgage, then the payments on the same are to be assumed and paid by the grantees.' "

In return, Mr. Huben paid the amount due on the land contract of $750.06, together with other items, $1,106.97 in all.

Subsequent to the execution of the instrument, Mrs. Sheets left for Chicago, confiding to Mr. Huben the collection of rental from the premises and the making of necessary disbursements with respect thereto. Unfortunately, difficulties ensued between the parties. One night, in his home, the rent money was stolen out of Mr. Huben's pants pocket, and he charged the loss to Mrs. Sheets. She did not acquiesce in sustaining the loss. "I thought he was responsible for it," she said. Moreover, Mrs. Sheets had, on or about this time, received a substantial amount of money from her workmen's compensation award. The relations between the parties not being what they were, Mrs. Sheets asked defendant Huben:

"how much money I would need to close out with him entirely; to give him what money he had put in and what interest he wanted for loaning me the money. I said although he had told me he didn't want anything to loan me their money but at the same time I thought he was entitled to it. I said: anything that was right for the money for the time

I had it. He said I couldn't buy it back, that they owned the house, they owned it and bought it."

The relief sought by plaintiff in her bill of complaint, a judicial determination that the instrument in question should have the legal effect of a mortgage, was granted by the trial chancellor.

Cases comparable to the instant case have come before our Court with some regularity and the principles governing them are well established. The intent of the parties is the determining factor and no form of words employed in the written instrument is conclusive of that intent. Where we have determined from an investigation of the instrument itself, the acts of the parties, and all the surrounding circumstances, that the true intent is that the property stand as security for the repayment of a loan, we have construed the instrument as a mortgage. See, *e.g., Alber* v. *Bradley,* 321 Mich 255. On the other hand, the burden rests on the parties asserting rights on the theory of a mortgage to establish their claim by clear and satisfactory proof. *Porritt* v. *Stone,* 340 Mich 645. See, also, *Rehn* v. *Booth,* 299 Mich 311.

Here we have a person, allegedly one who has made an absolute conveyance, with an equity in a home of at least $2,400 (a figure which represents payment of the balance due on the land contract). This sum includes, as the trial chancellor put it, "only a modest allowance for landscaping and improvements." If the transaction is in truth a sale, as defendants assert, we must conclude that plaintiff was disposing of this equity for the sum of $1,106 and, in addition, agreeing to pay the balance of the mortgage debt. While inadequacy of consideration is not an infallible test, it is an indication that the parties did not consider the conveyance to be absolute, *Simington* v. *Goldstein,* 330 Mich 536; *Schmidt* v. *Barclay,* 161

Mich 1 (20 Ann Cas 1194), particularly where the bargaining positions of the parties are markedly unequal. As the trial chancellor found:

"Plaintiff appears to be somewhat confused as to the details surrounding the transaction in question. The friendly relationship which existed at the time, the fact that plaintiff made arrangements for defendant to collect rents for her, the agreement on her part to pay the mortgage indicate to the court that regardless of what defendants may have expected, the plaintiff did not think she was disposing of her property absolutely. She should be granted the relief asked."

We find no error. The decree is affirmed, with costs to appellee.

DETHMERS, C. J., and CARR, KELLY, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.