STAEBLER v BUCHANAN

OPINION OF THE COURT

1. APPEAL AND ERROR—EQUITABLE ACTION—DE NOVO REVIEW.

An equitable action is reviewed *de novo* on the whole record by the appellate court and it will not reverse the trial court unless it finds from a reading of the entire record that a different conclusion would have been reached had the appellate court sat as the trial court.

2. MORTGAGES—EQUITABLE    MORTGAGE—DEED—EVIDENCE—APPEAL AND ERROR.

A plaintiff bears the burden of establishing by clear and convincing proof that a warranty deed is not what it purported to be, but that in reality, it was security for a loan; the burden of plaintiff is the same in the appellate court as it was in the trial court.

3. EQUITY—LACHES.

Plaintiffs who seek to have a warranty deed declared a mortgage are guilty of laches where they knew all of the facts relied on for relief but did nothing for over seven years during which defendants made extensive repairs and improvement to the property.

DISSENT BY T. M. BURNS, J.

4. MORTGAGES—EQUITABLE MORTGAGE—DEED—EVIDENCE—INTENT.

*The determination of whether a deed should be construed as a mortgage depends upon the intention of the parties at the time the deed was executed; in order to uncover the parties' intent all of the surrounding circumstances are taken into account including the inadequacy of consideration, the pecuniary em-*

REFERENCES FOR POINTS IN HEADNOTES
[1] 27 Am Jur 2d, Equity §§ 266, 267.
[2] 55 Am Jur 2d, Mortgages §§ 11, 12, 243.
[3] 55 Am Jur 2d, Mortgages §§ 302, 1335.
[4] 55 Am Jur 2d, Mortgages §§ 1, 33, 39–41.
[5] 27 Am Jur 2d, Equity §§ 169–172.

barrassment of the grantor, and the grantor's indebtedness to
the grantee.

5. EQUITY—LACHES—LAPSE OF TIME—PREJUDICE.

A prejudicial delay must be shown before the doctrine of laches
can be invoked; mere delay without more will not constitute
laches; moreover, laches will not be applied to defeat a claim
where it would be inequitable to do so.

Appeal from Washtenaw, William F. Ager, Jr.,
J. Submitted Division 2 November 13, 1972, at
Lansing. (Docket No. 12812.) Decided February 21,
1973. Leave to appeal denied, 389 Mich 810.

Complaint by William F. Staebler and Leonora
O. Staebler against G. Cameron Buchanan and
Helen G. Buchanan to have a warranty deed de-
clared a mortgage and for other relief. Judgment
for defendants. Plaintiffs appeal. Affirmed.

*Bilakos & Hanlon,* for plaintiffs.

*Keyes, Creal & Hurbis,* for defendants.

Before: QUINN, P. J., and J. H. GILLIS and T. M.
BURNS, JJ.

QUINN, P. J. September 17, 1969, plaintiffs filed
this action to have a warranty deed from them to
defendants and dated September 23, 1960, declared
a mortgage and for other relief. In addition to
traversing the allegations of plaintiffs' complaint,
defendants' answer affirmatively pleaded defenses
of laches and clean hands. The cause was tried
before the judge with an advisory jury and the
result was judgment for defendants. Plaintiffs ap-
peal.

Prior to September 23, 1960, plaintiffs owned
approximately 70 acres of land in Washtenaw
County on which they had built their home. The

property was subject to four mortgages, two of which had been foreclosed and sold on foreclosure sale; plaintiffs' right to redeem from these mortgage sales expired October 26, 1960, on one and January 22, 1961, on the other. The other two mortgages were in default. On September 23, 1960, the mortgage obligations of plaintiffs totaled $34,534.79. In 1959, plaintiffs were having financial difficulty and planned to sell 60 acres of the land. They met G. Cameron Buchanan through Edgar F. Mansfield, a lawyer and brother-in-law of Buchanan. November 7, 1959, Mr. Buchanan executed an offer to purchase plaintiffs' property, except the house and 2.49 acres for $30,000. January 22, 1960, this offer was withdrawn and the deposit was forfeited because Mrs. Buchanan decided not to move from Franklin, Michigan.

In August 1960, William Staebler went to Mr. Buchanan and inquired if the latter would loan him enough money to pay off the mortgages. Mr. Buchanan said he would not loan the money. A few weeks later, Mr. Staebler returned to Mr. Buchanan and inquired if the latter would buy the farm. Mr. Buchanan said that he and his wife would visit the premises and they did. On this visit, Mr. Buchanan advised the plaintiffs that after Mr. Buchanan knew how much the plaintiffs owed, the status of the mortgages and how much it would cost and if it could be worked out, Mr. Buchanan would buy the farm and sell the house and some acreage to the plaintiffs on a land contract.

September 23, 1960, plaintiffs executed the warranty deed involved conveying the entire farm to defendants. The same day defendants, as sellers, and plaintiffs, as purchasers, executed a land contract in the amount of $21,000 which recited a

down payment of $1,000 and which covered the house and 2.49 acres. The contract required payments of $200 per month commencing October 19, 1960. Plaintiffs paid as required by the contract in October and November 1960, and they made a further payment in January 1961. When no payment was made in February or March 1961, Mr. Buchanan requested the plaintiffs to come to the former's office and they did March 21, 1961.

On the latter date, the plaintiffs assigned their interest in the land contract to the defendants. The same day the defendants, as lessors, and plaintiffs, as lessees, executed a lease of the house and 1.69 acres of land for a term commencing December 19, 1960* and ending May 31, 1962. The rent was one dollar and the lease contained the following option:

"Upon election to purchase by the tenant in writing on or before March 1, 1962 and upon proof of financial ability to so perform, lessors agree to sell the within described premises to the lessees on land contract providing for a total purchase price of $23,300; a down payment of $5,100 and monthly payments of not less than $200 per month to be applied first upon interest and balance on principal and in addition thereto an additional monthly payment of $40 per month to be accumulated by the sellers for payment of taxes, said contract to be paid in full within five years. Said contract shall further provide that in the event the purchaser obtains a bona fide purchase, seller shall have the option to purchase said premises under identical provisions."

This option was never exercised and the lease expired. Plaintiffs requested an extension of right of occupancy until they could locate a place to live. This request was granted, and when plaintiffs

---

* Due date of the last payment by plaintiffs on the land contract.

located a house about July 1, 1962, they moved,
except for some personal property, and surren-
dered the keys to Mr. Buchanan. Plaintiffs re-
turned some time later and removed the personal
property.

After receiving the deed of September 23, 1960,
and up until time of trial, defendants paid the
1959 taxes in the amount of $376.28, 1960 and
1961 taxes in amounts not disclosed by the record,
and taxes from 1962 through 1970 in the aggre-
gate amount of $9,698.60. Defendants paid all of
plaintiffs' mortgage indebtedness and made exten-
sive repairs and improvements to the property.
The aggregate amount paid by defendants on the
mortgages and for repairs and improvements was
approximately $60,000.

Until this action was started September 17,
1969, defendants were never aware that plaintiffs
claimed that the deed of September 23, 1960, was
a mortgage.

The following special question was submitted to
the advisory jury:

"Did plaintiffs, that's Mr. and Mrs. Staebler, did
plaintiffs sustain their burden of proving that the in-
strument signed by the parties on September 23, 1960,
was intended by both parties to be a mortgage rather
than a deed as stated on the face of the instrument?"

The jury's answer was no.

In his written opinion, the trial judge found:

"The court finds that the plaintiffs did not sustain
their burden of proving that the deed signed by plain-
tiffs and running to the defendants on September 23,
1960, was intended by the parties to be a mortgage. The
court finds that the jury verdict was proper and that
the evidence sustained said verdict. The evidence estab-
lished the fact that the warranty deed was in the usual

statutory form and that it was, at the time it was signed, the intent of the parties to convey the property to the defendants subject to the existing mortgages of record."

The action being equitable in nature, we review *de novo* on the whole record, but we do not reverse the trial court unless we find from a reading of the entire record that we would have reached a different conclusion, *Stacey v Mikolowski,* 367 Mich 550, 556 (1962). Plaintiffs bore the burden of establishing by clear and convincing proof that the warranty deed of September 23, 1960, was not what it purported to be, but, in reality, it was security for a loan, *Ellis v Wayne Real Estate Co,* 357 Mich 115 (1959). That burden of plaintiffs is the same in this Court as it was in the trial court. They failed to meet it in the trial court, and they have failed to meet it on the record before us for the following reasons of record:

1. To extricate themselves from financial difficulties, plaintiffs first wanted to sell the farm, except for the house and a few acres.

2. Defendants' first contact with plaintiffs was an offer to buy what plaintiffs wanted to sell.

3. Defendants declined to loan plaintiffs the money to re-finance the mortgages.

4. The proposal which defendants finally made to plaintiffs as a method of saving their property was accepted by plaintiffs and partially performed by them.

5. When plaintiffs defaulted on the land contract, they accepted the lease-option arrangement of March 21, 1961, a clear indication they claimed no title at that time.

6. Request for extension of right to occupy the premises until plaintiffs could find another place

to live. Voluntary relinquishment of the premises about July 1, 1962, and no assertion of any claim of title until September 17, 1969, when this action was filed.

Additionally, all of the facts presently relied on for relief were known to plaintiffs in July of 1962. They did nothing for over seven years, during which time defendants made extensive repairs and improvements to the property. Contrary to the findings of the advisory jury and the trial judge, in our opinion, plaintiffs are guilty of laches.

Affirmed with costs to defendants.

J. H. GILLIS, J., concurred.

T. M. BURNS, J. *(dissenting)*. I am persuaded that the plaintiffs have demonstrated by clear and convincing evidence that the warranty deed executed on September 30, 1960, was intended by the parties to operate as a mortgage on the 2.49 acres and dwelling covered by the land contract.

The determination of whether a deed should be construed as a mortgage depends upon the intention of the parties at the time the deed was executed. In order to uncover the parties' intent all of the surrounding circumstances are taken into account including the inadequacy of consideration, the pecuniary embarrassment of the grantor, and the grantor's indebtedness to the grantee. *Sheets v Huben,* 354 Mich 536 (1958); *Ellis v Wayne Real Estate Co,* 357 Mich 115 (1959); *Taines v Munson,* 19 Mich App 29 (1969).

The evidence adduced at trial which shows that the deed was treated by the parties as a mortgage and not as a conveyance of absolute title may be briefly summarized as follows: The plaintiffs were in dire financial circumstances. The Federal reve-

nue stamps purchased and attached to the deed by the defendants covered only the vacant land and did not include the dwelling and the surrounding 2.49 acres. Several weeks after the deed and land contract were executed, defendant G. Cameron Buchanan wrote a letter to the Lawyers Title Company of Ann Arbor and requested a title policy only on the plaintiffs' vacant farm land. The house and 2.49 acres were expressly eliminated from the request. Moreover, on the second page of this correspondence, the defendant expressly admitted that the plaintiffs enjoyed an equitable mortgage in the property. Finally the consideration involved was woefully inadequate. At trial plaintiffs' entire farm was valued at between $58,-000 and $76,000. Assuming for the moment that the transaction in question was a sale then the defendants, by assuming and paying the mortgages on the property, paid a purchase price of $35,000. Or in other words the defendants obtained title to the property for at least $20,000 less than the fair market value. This inadequate consideration in and of itself strongly militates against the conclusion that a deed was intended to operate as an absolute conveyance. *Sheets v Huben, supra; Ellis v Wayne Real Estate Co, supra; Taines v Munson, supra.*

The inadequate consideration coupled with the plaintiffs' financial plight together with the actions and admissions of the defendants in procuring the Federal revenue stamps and title insurance compels me to conclude that in keeping with the parties' apparent intentions, the deed should be construed as a mortgage on the dwelling and 2.49 acres described in the land contract.

Finally, the majority concludes that in any event plaintiffs were guilty of laches. I cannot agree.

Before the doctrine of laches can be invoked, it must be shown that there was a prejudicial delay. Mere delay without more will not constitute laches. Moreover, laches will not be applied to defeat a claim where it would be inequitable to do so. *Kelley v Hoogerhyde,* 314 Mich 37 (1946); *Plasger v Leonard,* 316 Mich 174 (1946); *Taines v Munson, supra.*

Under the circumstances of this case it is patent that the defendants either knew or should have known that the deed was in fact considered by all concerned to be a mortgage. Therefore before embarking upon any extensive repairs or improvements, the defendants should have sought foreclosure of the equitable mortgage. They cannot now be heard to complain that they have been prejudiced by the fact that plaintiffs have elected to exercise their concurrent right of redemption.

Accordingly, I would remand the case for an accounting in order to allow the plaintiffs to redeem the dwelling and 2.49 acres from the equitable mortgage.