BRYCE v JONES

1. DEEDS—MORTGAGES—EQUITABLE MORTGAGES—EVIDENCE.

A party asserting that a deed absolute is in reality an equitable mortgage must establish that claim by clear and convincing proof that a mortgage was intended by the parties at the time the deed was executed.

2. DEEDS—MORTGAGES—EQUITABLE MORTGAGES—EVIDENCE.

A deed from the titleholder should not be construed as an equitable mortgage where there was no proof offered which would support a finding that the titleholder intended the deed to be other than an absolute transfer of her property interest.

3. DEEDS—MORTGAGES—EQUITABLE MORTGAGES—EVIDENCE.

The belief on the part of one party that a deed was to operate as a mortgage is not sufficient to change the nature of the written instrument since the necessary indicia of proof is that both parties intended the deed to have that effect; absent such proof, there can be no clear showing that the deed should be treated as other than a deed.

4. PRINCIPAL AND AGENT—SALE OF PROPERTY—POWER OF AGENT— APPARENT AUTHORITY—EVIDENCE.

A person did not act as an agent for plaintiffs in the selling of property where there is no proof that plaintiffs ever empowered that person with the right to sell the property, and the defendants' reliance upon the apparent authority which arose out of the fact that the person collected land contract payments for

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 23 Am Jur 2d, Deeds §§ 8, 12.
   55 Am Jur 2d, Mortgages §§ 11, 12, 39.
[4] 3 Am Jur 2d, Agency §§ 73–76.
   Implied or apparent authority of agent to purchase or order goods or merchandise. 55 ALR2d 6.
[5] 3 Am Jur 2d, Agency §§ 282–284.
   Comment Note.—Imputing to principal knowledge of agent having adverse interest or acting antagonistically to principal. 104 ALR 1246.
[6] 23 Am Jur 2d, Deeds § 155.

the property was unfounded where, even assuming that collection of land contract payments gives rise to apparent authority to convey title, there is no proof that plaintiffs authorized the person to collect the land contract payments.

5. PRINCIPAL AND AGENT—IMPUTATION OF KNOWLEDGE—AGENT'S AD-
    VERSE INTEREST.

    Knowledge on the part of an agent normally is imputable to the principal; but where the interest of the agent is adverse to that of his principal, the agent's knowledge is not imputable.

6. DEEDS—WARRANTY DEEDS—LAND CONTRACTS—RECORDING LAND
    CONTRACTS—STATUTES.

    Bona fide purchasers of land, who received a warranty deed from the titleholder and who had no knowledge of an existing unrecorded land contract covering a prior sale of the land, took title free of the land contract interest (MCLA 565.29).

Appeal from Macomb, Alton H. Noe, J. Submitted Division 1 April 9, 1974, at Detroit. (Docket No. 17352.) Decided August 13, 1974. Leave to appeal applied for.

Complaint by Richard H. Bryce and Leona A. Bryce against Jimmie A. Jones, Arlyle R. Jones, and Citizens Federal Savings and Loan Association of Port Huron to have a deed set aside and their rights in certain property determined. Counterclaim by the Joneses against the plaintiffs seeking an order giving them legal title to the property. Counterclaim by the loan association against the plaintiffs seeking to have its mortgage lien given priority if it was determined that the plaintiffs' title was superior to that of the Joneses. Cross-claim by the loan association against the Joneses seeking the amount of the principal balance of its mortgage loan plus accrued interest and monies advanced if it was determined that the Joneses had no title to the property and that the loan association has no lien on the premises. Judgment for plaintiffs. Defendants appeal. Reversed and remanded with instructions.

*Yoe, Casey & Moore,* for plaintiffs.

*Reid, Gilmore & Reid,* for defendants Jones.

*Touma, Watson & Andresen,* for defendant Citizens Federal Savings and Loan Association of Port Huron.

Before: GILLIS, P. J., and HOLBROOK and VAN VALKENBURG,* JJ.

VAN VALKENBURG, J. The facts underlying this appeal read like what one would expect to find in a law school examination in a real property class. Prior to March 9, 1966 Lorraine Karpinsky owned the property which is the subject of this litigation. On that date she sold this lot to one Stanley Hojnacki on a land contract. The land contract was not recorded. On August 31, 1966 she conveyed the property to plaintiffs by warranty deed. There is nothing on the deed indicating the existence of the land contract or evidencing that the deed was only for the vendor's interest.

Lest the reader jump to the hasty conclusion that the villain of this story is Mrs. Karpinsky, we must digress for a moment to describe the nature of the events which led to this sale. Plaintiffs had on a number of prior occasions entered into certain financial transactions with one Louis H. Cheff, a real estate broker who operated a business known as Cheff Mortgage & Realty Company.[1] Plaintiffs at that point were satisfied with the nature of the prior investments made through

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] This is not the first contact this Court has had with Mr. Cheff, he having appealed his November 1969 criminal conviction for obtaining money under false pretenses to this Court. *See People v Cheff,* 37 Mich App 1, 194 NW2d 401 (1971).

Cheff and trusted him. In August of 1966 plaintiffs were contacted by Cheff and were advised by him that Mrs. Karpinsky wanted to borrow $5,000 at 7% per annum and would put the property up as security. Dr. Bryce viewed the property and concluded that the property was worth that amount. Mrs. Bryce thereafter gave Cheff a check for $5,-000 and later received the aforementioned deed. The deed was recorded on September 12, 1966. It should be noted that at trial plaintiffs denied any knowledge of the land contract. Plaintiffs believed that the monthly checks sent to them by Cheff represented interest payments on their $5,000 loan.

In April of 1967 defendants Jones contacted Sutter Realty about a lot upon which to build a home. Irving Little, a salesman with Sutter Realty, showed the Joneses the lot which is the subject of this litigation. Little, having handled the land contract sale to Hojnacki, put defendants Jones in touch with Hojnacki. The Joneses purchased from Hojnacki his vendee's interest. The Joneses decided to pay off the vendor's interest, and, therefore they, through Little, contacted Cheff. The reason that Cheff was contacted was that pursuant to an undated letter bearing the signature of Mrs. Karpinsky and written upon the letterhead of Cheff Realty, Sutter Realty, who had been collecting the land contract payments from Hojnacki, had been instructed to make such payments to Cheff. Thereafter, apparently without any personal contact between either Little and the Joneses and Cheff, the Joneses tendered a check in the amount of the balance due, $1,721.24, and they received in return a deed to the lot. It is conceded by all concerned that plaintiffs' signatures on the deed and their endorsements on the check were

forged. Defendants Jones thereafter built a house on the lot, they having secured a mortgage from defendant loan association in order to build said house.

Meanwhile, plaintiffs continued to receive monthly payments from Cheff until July of 1968, at which time payments suddenly stopped. It was not until 1970 that plaintiffs learned of the forged deed, and thereafter they commenced this action. In their complaint plaintiffs sought to have the forged deed set aside and their rights in the property determined and sought such other relief as might be necessary and proper.

Defendants Jones filed a counterclaim alleging that they paid in full and sought an order giving them legal title to the property.

Defendant loan association filed a counterclaim seeking to have its mortgage lien given priority if it was determined that plaintiffs' title was superior to that of defendants Jones.

The matter originally came to trial in November of 1971. At that time, at the close of plaintiffs' proofs defendants moved for a directed verdict, which was granted. Plaintiffs thereafter moved for a rehearing pursuant to GCR 1963, 527, which was granted. The matter finally came to trial again in May of 1973, at which time additional proofs were taken. At that time the trial court reversed himself and found for the plaintiffs. The judgment provided that plaintiffs had an equitable mortgage in the amount of $5000 plus interest from September 1, 1968 at the rate of 7% per annum. The judgment further provided that plaintiffs' equitable mortgage had priority over the equitable title acquired by defendants Jones by reason of their purchase of the unrecorded land contract. From that judgment defendants appeal.

Defendants assert that the trial court erred in holding that plaintiffs' deed from Mrs. Karpinsky should be construed as an equitable mortgage. We agree. It is the well-settled law of this state that the one asserting that a deed absolute is in reality an equitable mortgage must establish that claim by clear and convincing proof that a mortgage was intended by the parties at the time the deed was executed. *Sheets v Huben,* 354 Mich 536; 93 NW2d 168 (1958); *Ellis v Wayne Real Estate Company,* 357 Mich 115; 97 NW2d 758 (1959); *Staebler v Buchanan,* 45 Mich App 55; 205 NW2d 843 (1973). The touchstone is thus whether there was clear proof that the parties intended the deed to operate merely as a mortgage. While it is clear that plaintiffs felt that the deed was merely the means by which their "loan" was secured, there was absolutely no proof offered which would support a finding that Mrs. Karpinsky intended the deed to be other than an absolute transfer of her property interest. The belief on the part of one party that the deed was to operate as a mortgage is not sufficient to change the nature of the written instrument, since the necessary indicia of proof is that both parties intended the deed to have that effect. Absent such proof, there can be no clear showing that the deed should be treated as other than a deed. Accordingly, the trial court erred in holding the deed to be an equitable mortgage.

If plaintiffs do not have an equitable mortgage, what then is their interest in the property? Defendants argue that plaintiffs should be bound by the acts of their agent Cheff and be adjudged to have sold their property interest to defendants. We cannot agree with this contention. There is absolutely no proof that plaintiffs ever empowered Cheff with the right to sell the property. Defend-

ants however rely upon the apparent authority which arose out of the fact that Cheff collected the land contract payments from Hojnacki. Even assuming that collection of land contract payments gives rise to apparent authority to convey title, defendants' argument must fail, since there is absolutely no proof that plaintiffs authorized Cheff to collect the land contract payments. In fact, it was uncontroverted that plaintiffs were unaware of the existence of the land contract until after defendants purchased the land. It would therefore be anomalous to say that Cheff was plaintiffs' agent with respect to the collection of the land contract payments.

Since the forged deed did not convey plaintiffs' interest to defendants, the sole remaining question is what plaintiffs' interest is. Again we must return to the question of agency. It is uncontroverted that at the time plaintiffs acquired title to the property they had no actual notice of the unrecorded land contract. As such they took title to the property free from the land contract, unless Cheff had knowledge of the unrecorded land contract and plaintiffs are chargeable with that knowledge. Assuming that Cheff had knowledge of the fact that there was this unrecorded interest, under these circumstances we hold that plaintiffs are not chargeable with that knowledge. While normally knowledge on the part of an agent is imputable to the principal, where the interest of the agent is adverse to that of his principal, the agent's knowledge is not imputable to the principal. See *Luton v Sharp,* 94 Mich 202; 53 NW 1054 (1892); *Tapert v Lehmann,* 259 Mich 447; 243 NW 256 (1932); *Valley Jitney Jungle Co v Hamady,* 264 Mich 354; 249 NW 888 (1933); *Hoekzema v Van Haften,* 313 Mich 417; 21 NW2d 183 (1946). If

nothing else, the record before us supports a finding that Cheff's interest in the transaction was self-centered and clearly adverse to that of his principals, the plaintiffs. Accordingly, plaintiffs, being bona fide purchasers without knowledge of the unrecorded land contract, took title free from that land contract interest. See MCLA 565.29; MSA 26.547.

It is thus clear that defendants have no legal title to the property, the deed being a forgery and the land contract being void by reason of the above-cited recording statute. What equitable rights they may have with respect to the improvements can only be determined upon proofs in the trial court. While it is hoped that defendants still can recover from the bank the money wrongfully paid over the forged endorsements and/or can recover under the title insurance policy, this case does bring home the need for careful investigation before entering into any transaction as complex as the purchase of real estate.

Reversed and remanded for proceedings and orders consistent with this opinion. No costs, neither party having prevailed in full. This Court does not retain jurisdiction.

All concurred.