**In the Matter of James HAVERSTICK, Debtor.**

**James Haverstick, Plaintiff,**

v.

**Sources Financial Holding Co., Ltd. and Amos Knoll, Defendants.**

**Robert Barrick, Trustee of Robert L. Barrick Trust, Plaintiff,**

v.

**James Haverstick, Defendant.**

**Bankruptcy No. 02–42400–PJS. Adversary Nos. 02–4531, 03–4105.**

United States Bankruptcy Court, E.D. Michigan, Southern Division.

June 26, 2003.

James Haverstick, Westland, MI, pro se.

Marion J. Mack, Detroit, MI, trustee.

### *MEMORANDUM OPINION DENYING MOTION FOR SUMMARY JUDGMENT FILED BY ROBERT L. BARRICK*

PHILLIP J. SHEFFERLY,
Bankruptcy Judge.

This matter has become before the Court upon the Motion of Robert L. Barrick Requesting Entry of Order of Default by Debtor and Order Confirming Debtor Has No Interest in Certain Real Property Pursuant to L.B.R. 9014–1 and F.R.C.P. 56 ("Motion for Summary Judgment"). A response to the Motion for Summary Judgment was filed by Defendant, James Haverstick. For the reasons set forth in this Memorandum Opinion, the Motion for Summary Judgment is denied.

### *FACTS*

This adversary proceeding arises out of a dispute between the Plaintiff, Robert L. Barrick, Trustee of Robert L. Barrick Trust ("Barrick") and the Debtor, James

Haverstick ("Haverstick"). Haverstick filed a voluntary petition for relief under Chapter 11 on January 31, 2002. At that time, Haverstick was the sole owner of several towing companies. Haverstick's assets consisted primarily of interests in various parcels of real property, some of which were vacant, others of which Haverstick used in connection with his towing operations. At the time Haverstick filed his Chapter 11 petition, mortgage foreclosures had already been conducted with respect to a number of these properties. Haverstick's interest in many of these properties was reduced at that point to a state law statutory right of redemption under applicable Michigan foreclosure law. Absent bankruptcy, the state law foreclosure redemption period was set to expire on February 1, 2002. By filing his Chapter 11 petition prior to the expiration of the state law of right of redemption, Haverstick extended the time to redeem from such foreclosure sales by sixty days pursuant to § 108 of the Bankruptcy Code. Therefore, the bankruptcy filing would enable Haverstick to have until April 1, 2002 in which to redeem from the foreclosure sales with respect to these properties.

According to Haverstick's proposed plan of reorganization in this case and from a review of the Court's file, it appears that the initial sixty days of this Chapter 11 case was spent by Haverstick attempting to obtain financing to redeem the properties. After exploring various sources unsuccessfully, Haverstick reached an agreement with Barrick pursuant to which Barrick would provide Haverstick with approximately $1,400,000, which Haverstick would then use to redeem from foreclosure various parcels of real property, certain vacant properties, and some improved or partially improved properties (collectively, "the Properties"). On March 27, 2002, Haverstick filed a Motion to Allow Post Petition Financing and

requested that the Court conduct an expedited hearing with respect to the motion. Haverstick requested the hearing on an expedited basis with shortened notice because, even with the additional sixty days provided by § 108 of the Bankruptcy Code, the redemption period with respect to all of the Properties was set to expire on April 1, 2002. Therefore, if Haverstick was to obtain authority from the Court to enter into a transaction with Barrick to provide the $1,400,000 necessary to redeem the Properties from the foreclosure sales, the transaction would have to be approved and closed no later than April 1, 2002 or else Haverstick's interest in all of the Properties would be extinguished under Michigan law and any equity in the Properties would be forever lost to the bankruptcy estate.

Beginning on March 28, 2002 and continuing on March 29, 2002, the Court conducted the expedited hearing with respect to the Motion to Allow Post Petition Financing. At the hearing, Haverstick's attorney recited on the record the terms of the agreement reached between Haverstick and Barrick. Various parties holding claims against the Properties or claims against the estate appeared at the hearing and some of them raised objections. At the conclusion of the second day of the hearing on Friday, March 29, 2002, the Court entered an Order Allowing Post Petition Financing and Sale of Certain Real Property ("Order Allowing Post Petition Financing") (Docket # 47). There are a number of handwritten changes on the Order that were made during the course of the March 29, 2002 hearing in response to questions raised by the Court as to the nature of the transaction to be entered by Barrick and Haverstick. It is clear from a reading of the motion, the Order Allowing Post Petition Financing, and the transcript of the March 28 and 29 hearing, that many

of the details of the agreement between Haverstick and Barrick were still being worked out as the parties moved at an accelerated pace to have the transaction approved and consummated by the April 1, 2002 date.

The basic transaction approved by the Order Allowing Post Petition Financing was for Barrick to provide Haverstick the sum of $1,400,000 which Haverstick would then use to redeem the Properties from the foreclosure sales that had taken place. Haverstick was to execute and deliver quit claim deeds to Barrick for all of the Properties. Barrick would then lease back to Haverstick all of the Properties, except for one property located at 29333 Hildebrant ("Hildebrant Property"). Haverstick was also to be granted an option to purchase all the Properties except the Hildebrant Property. Apparently, the outright conveyance of the Hildebrant Property was part of the consideration given by Haverstick to Barrick to induce Barrick to enter into the agreement to advance the $1,400,000. From a review of the pleadings filed, the transcript of the hearing, and the Order Allowing Post Petition Financing, it appears that the parties intended that Haverstick would then lease for three years all of the Properties other than the Hildebrant Property, and throughout that three-year period, Haverstick would have an option to purchase all of the Properties other than the Hildebrant Property back from Barrick. The Order Allowing Post Petition Financing provided that Haverstick and Barrick would enter into a Lease and Option to Purchase. The parties then worked to close the transaction and did so on April 1, 2002. Barrick advanced the $1,400,000. Haverstick executed deeds to all of the Properties and Haverstick and Barrick executed a Business Property Lease on April 1, 2002.

The Business Property Lease ("Lease") denoted Barrick as "Landlord" and Haverstick as "Tenant." (Barrick's Br. in Supp., Ex. 2. at 1.) Under the Lease, Haverstick was required to pay rent to Barrick in an amount equivalent to 1% of the "Total Outstanding Advancement", and the Lease defined the "Total Outstanding Advancement" as the $1,400,000 that had been advanced by Barrick to Haverstick to redeem the Properties. (*Id.* at 1–2.) In other words, Haverstick was to pay $14,000 per month as rent under the Lease. The Lease was described on its face as a "Triple Net Lease" which required Haverstick to pay for taxes, insurance and other expenses in addition to the $14,000 per month rent. (*Id.* at 2.) The Lease also provided that the first rent payment would be due and payable on June 15, 2002. (*Id.* at 1.)

Haverstick and Barrick agree on little as to what happened after April 1, 2002. However, they both agree that Haverstick made the rent payments on or about June 15 and July 15, 2002, and that he made no rent payments after that date. Haverstick testified in his deposition on May 27, 2003 that he tendered one additional payment but claims that it was not cashed. Regardless of the circumstances concerning that payment, both parties agree that no payments were made after the July 15, 2002 payment.

On August 7, 2002, Barrick's counsel wrote to Haverstick's counsel to advise of Haverstick's failure to pay insurance as required under the Lease. (*Id.*, Ex. 5.) On August 22, 2002, Barrick's counsel again wrote to Haverstick's counsel, this time to advise of Haverstick's non-payment of the August rent due under the Lease. (*Id.*) Both the August 7 and August 22 letters referenced paragraph 36 in the Lease, entitled "Special Rent Default Provision," which provides as follows:

Due to the unique nature of this Lease, Landlord and Tenant agree that in the event that Tenant is more than sixty (60) days past due in its rental payments hereunder, provided that Landlord has provided written notice to Tenant of such default within 30 days of such default, or 30 days after written notice is sent by the Landlord to Tenant this Lease shall forthwith terminate as of the date of said written notice and all rights of Tenant hereunder shall immediately terminate. In such case, Tenant waives any and all legal rights against Landlord and agrees that Landlord may have all rights to possession of the premises without legal process. In the event that Landlord should have to initiate legal action to enforce its rights hereunder, Tenant shall pay all of the Landlord's reasonable attorney fees and costs relating to same.

(*Id.*, Ex. 2 at 8.)

On October 2, 2002, Barrick filed a Motion for Order Confirming Debtor Has No Interest in Certain Real Property. That motion sought an order determining that Haverstick had failed to cure the defaults under the Lease within the period of time permitted by paragraph 36 and, therefore, all of Haverstick's interest in the Properties was terminated. Haverstick replied by claiming that the reason he had not made the payments was because of an "oral modification agreement" that he had entered into with Barrick. In support of this claim, Haverstick filed an Affidavit on October 31, 2002 that, among other things, alleged that Barrick had orally agreed that Haverstick was not required to make the payments under the Lease until such time as Barrick sent a notice indicating his intent to enforce the Lease. (Barrick's Supplemental Br. in Supp., Ex. A.) The Affidavit further recited that Haverstick, in reliance on this oral agreement, did not take certain steps to obtain funds to make the required payments under the Lease.

After hearing argument by Barrick and Haverstick, the Court determined that the motion filed by Barrick sought relief that could only be granted by adversary proceeding rather than by motion. As a result, the Court entered two separate orders, on February 10 and February 13, 2003, that essentially converted Barrick's motion into an adversary proceeding. A scheduling order was entered on April 4, 2003 which set a trial date of September 17, 2003. Barrick filed the Motion for Summary Judgment on May 13, 2003. Haverstick filed a response and Barrick filed a supplemental brief in support of the Motion for Summary Judgment after taking Haverstick's deposition on May 27, 2003. The Motion for Summary Judgment was heard on June 20, 2003.

### STANDARD FOR SUMMARY JUDGMENT

Fed.R.Civ.P. 56(c) for summary judgment is incorporated into Fed. R. Bankr.P. 7056(c). Summary judgment is only appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine" issue is one where no reasonable fact-finder could return a judgment in favor of the non-moving party. *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir.1998) (citing *Anderson*, 447 U.S. at 248, 100 S.Ct. 2124). "The initial burden is on the

moving party to demonstrate that an essential element of the non-moving party's case is lacking." *Kalamazoo River Study Group v. Rockwell International Corp.,* 171 F.3d 1065, 1068 (6th Cir.1999) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "The burden then shifts to the non-moving party to come forward with specific facts, supported by evidence in the record, upon which a reasonable jury could return a verdict for the non-moving party." *Id.* (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

### *DISCUSSION*

Barrick contends that the Order Allowing Post Petition Financing is clear on its face. Barrick points to sub-paragraph (g) on the second page of the Order which provides as follows:

> In the event of any default, monetary or non-monetary, Debtor shall have 60 days to cure such default, provide [sic] that Barrick has sent written notice of such default within thirty days of such default. In the event that the written notice is sent after the thirty day period, the Debtor shall have thirty days to cure the default from the date of the written notice.

Barrick also relies on the second to the last paragraph of the Order which provides that "any failure of Debtor to exercise the option to purchase or to cure any default under the Lease shall entitle Barrick or his entity to keep the Real Property." Because the Order Allowing Post–Petition Financing and the Lease have specific time periods in which to cure any default, and because the non-payment of rent and other items since July, 2002 constitute defaults, Barrick argues that the Motion for Summary Judgment should be granted and that the Court should deter-

mine that Haverstick has no further interest in any of the Properties.

Haverstick submits that there are questions of fact that preclude the grant of summary judgment in favor of Barrick. First, in his Affidavit filed with the Court on October 31, 2002, Haverstick alleged the existence of an oral agreement with Barrick that somehow either prevented or excused Haverstick from making the payments required under the Lease. In his deposition on May 27, 2003, Haverstick seemed to recant the content of this Affidavit. (*See* Barrick's Supplemental Br. in Supp., Ex. B. at 40–44.) However, Haverstick now argues in opposition to the Motion for Summary Judgment that the transaction with Barrick is actually in the nature of a mortgage and not a lease. According to Haverstick, the consequence of determining the transaction to be a mortgage and not a lease is that he may have equitable rights of redemption under applicable Michigan case law that cannot be stripped from Haverstick.

■ Because the determination of whether a deed absolute on its face should be deemed a mortgage is based upon the intention of the parties, *see Sheets v. Huben,* 354 Mich. 536, 93 N.W.2d 168 (1958); *Koenig v. Van Reken,* 89 Mich.App. 102, 279 N.W.2d 590 (1979), Haverstick argues that there is a question of fact that precludes granting the Motion for Summary Judgment. The question of fact raised by Haverstick is evidenced by his deposition testimony where he testified he intended the transaction to be a mortgage and not a lease. (*See* Barrick's Supplemental Br. in Supp., Ex. B at 17, 21–28.) However, as Haverstick executed the deeds as part of his obligations under the Order Allowing Post Petition Financing, the deeds cannot be examined in a vacuum. Instead, they

must be viewed in light of the Order.[1]

■ Although the intent of the parties controls, the words of a document are presumed to reflect that intent. *See Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 372 (6th Cir. 1998) (noting that, under Michigan law, courts must "honor the intent of the parties" and look for that "intent in the words used in the instrument") (citations omitted). It is an elementary rule of construction that a court cannot look behind the words of an agreement absent ambiguity. *Id.* at 373 ("A court does not have the right to . . . look to extrinsic testimony to determine [the parties'] intent when the words used by them are clear and unambiguous and have a definite meaning.") (internal quotation marks and citation omitted). "A contract is ambiguous if the language is susceptible to two or more reasonable interpretations." *City of Wyandotte v. Consolidated Rail Corp.*, 262 F.3d 581, 585 (6th Cir.2001) (quoting *D'Avanzo v. Wise & Marsac, P.C.*, 223 Mich.App. 314, 565 N.W.2d 915, 918 (1997)). Thus, in determining whether the Court may consider Haverstick's explanations in his deposition, the Court must first look to the Order Allowing Post Petition Financing. If the Order presents an ambiguity on its face, only then may the Court "use traditional methods of contract interpretation to resolve the ambiguity, including drawing inferences and presumptions and introducing extrinsic evidence." *Schachner v. Blue Cross and Blue Shield of Ohio*, 77 F.3d

889, 893 (6th Cir.1996) (internal quotation marks and citation omitted).

■ The Order Allowing Post Petition Financing is not a model of clarity which, given the circumstances surrounding its drafting and execution, is understandable but unfortunate. It recites on the first page that the "Debtor is authorized to borrow an amount not to exceed $1,400,000 from Robert Barrick." This language suggests that the parties intended a loan. That suggestion is reinforced by the second page of the Order, which recites that

> as security of the obligation of Debtor, immediately after redeeming the properties, Debtor shall convey whatever title he has to all of the Real Properties to Barrick or any entity designated by Barrick.

The use of the term "security" in this paragraph, in combination with the authority given by the Order for the Debtor to "borrow" from Barrick, supports Haverstick's testimony that this was intended as a loan transaction.

On the other hand, Barrick points to other language in the Order Allowing Post Petition Financing that authorizes Haverstick, to enter into a "lease and option to purchase" with Barrick, which says nothing about execution of any mortgage or other security documents. Barrick further argues that the Order recites on its face that "any failure of Debtor to exercise the option to purchase or to cure any default under the Lease shall entitle Barrick . . .

---

1. Barrick argued that no case law supports finding an order of the court to be an equitable mortgage. However, the Order Allowing Post Petition Financing simply reflects the agreement of the parties. The fact that the agreement is memorialized in an order is due to the requirements of § 364 the Bankruptcy Code. Nothing prevents the Court from interpreting a consent order. *See Sault Ste. Marie*

*Tribe of Chippewa Indians v. Engler,* 146 F.3d 367 (6th Cir.1998) (applying rules of construction to a consent decree). In fact, as part of the Order Allowing Post Petition Financing, the Court expressly "retain[ed] jurisdiction over the interpretation and/or implimentation [sic] of the lease agreement and any other provisions of [the] Order."

to keep the Real Property." Those provisions support Barrick's characterization of the transaction as a sale with a lease of the Properties back to Haverstick. That argument is further supported by the terms of the Lease, which was signed by Haverstick and Barrick on April 1, 2002. The Lease addresses the consequences of a default in paragraph 36 and provides that in the event of an uncured default,

> this Lease shall forthwith terminate as of the date of said written notice and all rights of Tenant [Haverstick] hereunder shall immediately terminate.

Therefore, Barrick argues that Haverstick's intention is irrelevant because the Order Allowing Post Petition Financing and the Lease on their face create an outright conveyance with a lease back to Haverstick and do not create a mortgage or other security device for repayment of an obligation.

The Court concludes that the Order Allowing Post Petition Financing is not clear on its face and presents language capable of two reasonable interpretations. The somewhat hybrid nature of the relationship that Haverstick and Barrick created is further evidenced by a review of the transcript of the hearing on March 28, 2002 that led to the entry of the Order Allowing Post Petition Financing on March 29, 2002. In response to questions by the Court about the nature and attributes of the proposed transaction, Howard Borin, the attorney for Haverstick, when asked directly by the Court "[I]s it a mortgage?", answered as follows:

> On the face of it, it's not a mortgage. It has certain aspects that act like a mortgage, and the important one is that it's a non-recourse mortgage, so that if there is a default, there is no deficiency judgment against this debtor.

(Tr. Mar. 28, 2002 at 13, ll. 20–23 (Docket # 147).) Therefore, in ascertaining the intentions of Haverstick and Barrick, extrinsic evidence is required in making the ultimate determination of the nature of the relationship that they entered pursuant to the Order Allowing Post Petition Financing.

This conclusion necessarily presents a genuine issue of material fact, and thus precludes granting Barrick's Motion for Summary Judgment. Although the Court may ultimately conclude that the transaction is not a mortgage and does not create any equitable right to redemption or other residual property interest in Haverstick, the Court cannot reach that conclusion based solely on its review of the pleadings, affidavits and deposition transcripts that have been submitted to date. Because the Order Allowing Post Petition Financing is somewhat ambiguous on its face, the Court concludes that there are questions of fact regarding the intention of the parties that need to be resolved before the Court can enter judgment. Therefore, at this time, the Court will deny the Motion for Summary Judgment.

Although it is not prepared to grant summary judgment to Barrick at this time, the Court is concerned about the long period of time that it has taken to resolve this matter and that Haverstick has been in possession of the Properties throughout this period of time without compensating Barrick in any way since July, 2002. Whatever may be Barrick's interest in the Properties, whether ultimately determined to be the holder of fee title absolute, or whether determined to be that of a mortgagee, Barrick's interest is entitled to some protection during the life of this bankruptcy case. Trial in this adversary proceeding is scheduled for September 17, 2003. It would be inequitable to permit Haverstick to remain in possession of the Properties until that date without compensating Barrick for his interest in the Prop-

erties in any way. At some point, Barrick will be determined to be entitled to either terminate the Lease and evict Haverstick, or enforce and foreclose a mortgage against the Properties. In either case, Barrick will have some remedy. Because Barrick has an interest in the Properties which is presently unprotected, the Court will entertain from Barrick either a request to accelerate the trial date of September 17, 2003 or, alternatively, will consider on an expedited basis a motion to provide Barrick with adequate protection for his interest in the Properties pending the trial of this adversary proceeding.

The parties shall submit an order consistent with this opinion.